# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |  |
|---|---|---|---|
| | : | | |
| KEZIAH RIDGEWAY | : | | |
| *Plaintiff,* | : | | |
| vs. | : | **No.** | |
| | | **TRIAL BY JURY DEMANDED** | |
| | : | | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, *et al* | : | | |
| *Defendants.* | : | | |

## <u>COMPLAINT</u>

Now Comes Plaintiff, Keziah Ridgeway (Ridgeway),

by and through counsel, and brings this complaint against the

School District of Philadelphia (District) and individual

Defendants, for federal civil rights violations and various

torts under Pennsylvania law. Plaintiff avers as follows:

1.    This case is about the School District of

Philadelphia reprimanding a talented and dedicated teacher,

Keziah Ridgeway, because she spoke on issues of public concern and reported instances of wrongdoing and abuse of Muslims and racial and ethnic minorities.

### The Parties

2.    Plaintiff, Kezia Ridgeway (Ridgeway) is an employee of the School District of Philadelphia (District). At all times relevant to this complaint, Ridgeway was a teacher at Northeast High School (NEHS).

3.    Defendant School District of Philadelphia (District) is a government entity with headquarters at 440 N. Broad Street, Philadelphia. PA 19130. At all times relevant to this complaint, the District operated all the public schools in Philadelphia, PA., including NEHS.

4.    At all times relevant to this complaint, Defendant, Tony B. Watlington, Sr. (Watlington) was the Superintendent of Schools/Chief Executive Officer for the District. He is sued in his official and individual capacity.

5.     At all times relevant to this complaint, Defendant Lynn Rauch (Rauch) was General Counsel for the District. In this capacity she reported to Defendant Watlington and the Board of Directors/Trustees for the District. She is sued in her official and individual capacity.

6.     At all times relevant to this complaint, Defendant Richard Gordon (Gordon) was Assistant Superintendent for the District. In this role he reported to Defendant Watlington. He is sued in his official and individual capacity.

7.     At all times relevant to this complaint, Defendant Jeremy Grant Skinner (Skinner) was Deputy of Talent, Strategy, and Culture for the District. In this role he reported to Defendants Watlington, Hill, and Rauch. He is sued in his official and individual capacity.

8.    At all times relevant to this complaint, Defendant Subriya Jubilee was Chief Equity Officer for the District. In this role she reported to Defendants Watlington Hill, and Rauch. She is sued in her official and individual capacity.

9.    At all times relevant to this complaint, Defendant Michelle Chapman (Chapman) was Chief Deputy of Employee Labor Relations for the District. In this role she reported to Defendants Watlington, Hill and Rauch. She is sued in her official and individual capacity.

10.    At all times relevant to this complaint, Defendant Nadia McCrimon (McCrimon) was Director of Labor Relations for the District. In this role she reported to Defendants Watlington, Hill, and Rauch. She is sued in her official and individual capacity.

11.    At all times relevant to this complaint, Defendant Oz Hill (Hill) was Chief Operating Officer or Deputy Superintendent of Operations for the District. In this role he

reported to Defendant Watlington. He is sued in his official and individual capacity.

12.    At all times relevant to this complaint, Defendant Omar Crowder (Crowder) was Principal at NEHS. In this role he supervised Ridgeway and other teachers and staff, and he reported to Defendants Watlington, Hill, and Rauch. He is sued in his official and individual capacity.

## Jurisdiction and Venue

13.    The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 1343(a)(1) and (3) (civil rights), over Ridgeway's claims under 42 U.S.C. § 1983

14.    This Court has supplemental jurisdiction over Ridgeway's claims brought under Pennsylvania law pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the defendant is in Philadelphia, PA and all the events giving rise to this action occurred in Philadelphia, PA.

**Facts Giving Rise to The Causes of Action in This Complaint**

16.    Ridgeway is a devout Muslim woman of African-American descent.

17.    Ridgeway began teaching for the District at NEHS in August 2016. Ridgeway taught African American History, AP African American History, World History, and Social and Cultural Anthropology.

18.    Ridgeway taught at NEHS for eight years and never received any reprimand for discipline or performance.

19.    Indeed, Ridgeway provided outstanding performance and received several honors and awards, including: NEHS Pass the Viking Pride Award (2019 and 2022), NEHS Principal's Award (2019), Lindback Award for Distinguished Teaching (2020), and she was recognized by CBS Philadelphia for Teaching During the Pandemic (2020).

20.    Ridgeway reported to Omar Crowder (Crowder), principal and Vanessa Mecca, Assistant Principal at NEHS.

21.    On September 6, 2024, Despite her outstanding performance, Crowder and Gordon placed Ridgeway on paid administrative leave pending investigation.

22.    For two years, Ridgeway was faced with written slander, verbal abuse and other harassing remarks based upon her public support of Palestinians during the war on Gaza.

23.    The reprimand stemmed from a complaint by School District of Philadelphia Jewish Families Alliance, a Pro-Isreal Zionist group, alleging Ridgeway threatened gun violence.

24.    The reprimand was a pretextual and retaliatory attack by the District designed to silence Ridgeway for her political position on the conflict in Gaza and her complaints about islamophobia and inequities at NEHS and throughout the District.

*The Backstory – The Culture, Policy. And Practice of Religious, Racial, and Ethnic Discrimination in the District*

25.    In November 2023, a group of Palestinian and Sudanese students at NEHS formed a student club to support one another and bring attention to the plight of Palestinians in Gaza.

26.    . Although the club was approved, the students were upset that they were not permitted to wear their Kefiyyahs (a scarf with cultural and religious significance), in school.

27.    The students approached Ridgeway for help. She brokered a meeting with Crowder wherein students expressed their concerns and a resolution was reached. The students would be permitted to wear buttons— "Free Palestine" and "Sudan In Our Hearts"—regarding the ongoing Isreal-Palestine conflict. Students were also permitted to sell the

buttons as a fundraiser. Ridgeway purchased the buttons for the students.

28.    Ridgeway also wore the buttons.

29.    Pro-Isreal and Jewish faculty and staff at NEHS objected to students and Ridgway exercising their constitutional right to wearing the buttons. However, there was no similar objection to students and teachers wearing pins supporting Isreal.

30.    Upon information and belief, the Pro-Isreal and Jewish faculty, including Lisa Appel, Marla Lambert, and Alana Freidman-Lope, filed a grievance and complained to the District to stop Ridgeway and the students from wearing the buttons.

31.    During this time, in November 2023, a colleague reached out to Ridgeway with a professional development

teaching opportunity (PD) on How to teach the Genocide in Palestine in the classroom.

32.     Upon information and belief, the District Chair of the Social Studies Department approved the PD.

33.     Within 24 hours of approval of the PD, Pro-Isreal and Jewish faculty, staff, and members of the community objected, and The District required "genocide" be removed from the title of the PD. Ridgeway agreed to the change, but inexplicabley, the District subsequently cancelled the PD.

34.     On or about November 27, 2023. Shelly Robinson, retired District employee and teacher at NEHS, publicly called Ridgeway a "terrorist" and alleged Ridgeway was teaching terrorism. This slander occurred before the NEHS Alumni Association, Christopher Frank, and Crowder among others.

35.    Upon information and belief, in December 2023, Pro-Isreal and Jewish District employees and community members formed and or joined a group and a social media page for the group—School District of Philadelphia Jewish Families Alliance (SDPJFA or JFA).

36.    JFA used the social media page to defame Ridgeway by calling her antisemitic, and JFA posted confidential information about Muslim students at NEHS.

37.    Upon information and belief, employees of the District, including faculty and staff at NEHS, are members or otherwise associated with JFA.

38.    In December 2023, Ridgeway and colleagues, under the name Racial Justice Organizing, prepared their own PD presentation, on their own time, separate from the District. This PD was for teachers on how to teach the conflict in Gaza in the classroom.

39.    Upon the announcement of Racial Justice Organizer's professional development presentation, JFA began a campaign to defame Ridgeway. JFA sent mass emails to Governor Shapiro, Philadelphia City Counsel, the District, and others accusing Ridgeway of Anti Semitism and demanding she be fired. JFA partnered with Anti-Defamation League (ADL) to stop the presentation.

40.    JFA also began monitoring Ridgeway's social media. JFA continued the smear campaign alleging Ridgeway was antisemitic because she posted too much about Palestine.

41.    Ridgeway's posts were political and made on her personal social media.

42.    The posts were critical of the nation state of Isreal's positions regarding the conflict with Palestine.

43.    Ridgeway's posts included: "Free Palestine" and "Isreal is an Apartheid State."

44.    In December 2023, Ridgeway assigned her students a project to Compare and Contrast a Modern Day Indigenous and/or Oppressed Group that uses Art as a Form of Resistance with African American Art as a Form of Resistance during Antebellum Slavery.

45.    The students with the best project would have the project broadcast district wide for Black History Month. The students with the best project chose Palestine as the Modern Indigenous or Oppressed Group.

46.    Ridgeway forwarded the project to Crowder for review. Crowder approved the project and forwarded it to the District.

47.    Upon information and belief, Crowder, having not received timely response from the District, authorized Ridgeway to show the student project at a school assembly.

48.    At the assembly, Lisa Appel, a JFA member, recorded the student presentation.

49.    After the assembly, some of the Pro-Isreal and Jewish teachers at NEHS expressed outrage and discomfort with the project because Palestine was the topic.

50.    Ridgeway was told by White faculty to "focus on MLK and Harriet Tubman" and "Palestine has nothing to do with Black history."

51.    Following the assembly, Elana Freidman-Lope called Ridgeway into her office and informed Ridgeway that a grievance would be filed against her because Pro-Isreal and Jewish teachers were "uncomfortable." When Ridgeway

asked Why the teachers were uncomfortable Freidman- Loch

responded "they don't know. They just are."

52.    Later that day, Crowder called Ridgeway to inform

her that the District was censoring the student project due to

complaints from JFA and teachers and staff at NEHS.

53.    Upon information and belief, Lisa Appel leaked

her recording of the student presentation taken at the assembly,

which contained confidential information about the student,

with JFA and in the JFA social media.

54.    After learning that Lisa Appel leaked the student's

identity and presentation to JFA, Ridgeway reported it to

Crowder and the District.

55.    The student project never aired.

56.    In March or April 2024, Ridgeway confronted the

District at a Public Hearing regarding the censorship of the

student project and censorship of political speech in support of Palestine.

57.    After the Hearing, Gordon admitted that the District should not have censored the project. Assistant Superintendent Nunez, District Chief of Police, and Hanna Gann were present with Gordon after the Hearing.

58.    In March 2024, Councilwoman Kendra Brooks informed Ridgeway that JFA sent approximately 1500 emails accusing her of Anti Semitism and demanding she be fired.

59.    In April 2024, Ridgeway reported to the District that a male teacher, Joel Leggat, physically assaulted her in the hallway at NEHS because of her pro Palestine political view. The District took no action.

60.    In April 2024, Ishmael Jiminez, Director of Social Studies, invited Ridgeway to present at the Africana Studies Lecture Series on African Diaspora International Solidarity.

61.    Upon learning that Ridgeway would be a presenter, JFA complained to the District.

62.    Jubilee, Skinner, and Rauch forced Ridgeway to submit her slides for inspection.

63.    Jubilee and Rauch edited Ridgeway's presentation to eliminate any reference to Palestine and anything that could lead to discussion about Palestine.

64.    Jubilee then posted in the JFA social media group, in which only members have access, that Ridgeway's presentation had been limited to exclude references to Palestine and their complaints against Ridgeway were being investigated.

65.    Upon information and belief, Rauch then appointed her daughter, Allie Rauch, to monitor Ridgeway's presentation.

66.    In April 2024, despite the complaint against Lisa Appel for violating District policy and state and federal law regarding privacy of a student, the District had not begun to investigate Lisa Appel.

67.    Instead, District Director of Labor Relations, Skinner, opened an investigation into Ridgeway for her pro Palestine social media post. The law firm King Spry conducted the investigation.

68.    Upon information and belief, Lisa Appel had a history of recording students and releasing identities. She previously recorded a Palestinian student and claimed his graduation stole supported terrorism. She also recorded two students in November 2023 for wearing buttons that stated, "Sudan in our Hearts."

69.    It was not until June 2024, after several months of external pressure, did the District permit Crowder to investigate Lisa Appell.

70.    Upon information and belief, Appel had applied for Sabbatical after the deadline, and it was initially denied by Crowder.

71.    Upon information and belief, Skinner approved Appel's Sabbatical.

72.    Skinner also failed to facilitate or hold a forum wherein Jewish, Palestinian, Haitian, and Sudanese students could voice their concerns after complaints about the discriminatory culture at NEHS.

73.    In June or early July 2024, JFA continued their smear campaign against Ridgeway placing her on Canary Mission, a website where individuals are publicly labeled Anti-Semitic and their private and confidential information disclosed.  Ridgeway had been bombarded with threats, death threats, and constant harassment from JFA.

74.    Importantly, upon information and belief, employees of the District are also members or otherwise associated with JFA.

75.    In August 2024, Ridgeway gained access to the JFA private social media page and saw who was responsible for her ongoing harassment.

76.    Equipped with this new information, Ridgeway took to social media and posted "ain't no fun when the rabbit has the gun…part two is about to drop."

77.    Ridgeway intended to make a second social media post— "part two"—exposing individual District employees for their JFA affiliation, the Districts culture of Islamophobia and discrimination, and for their months long smear campaign and harassment.

78.    JFA, through the Deborah Project, complained to the District about Ridgeway's "ain't no fun when the rabbit got the gun" post alleging Ridgeway's post threatened gun violence.

79.    JFA, ADL, Jewish Federation of Greater Philadelphia, and the Deborah Project sent the complaint to Kristen Graham of the Philadelphia Inquirer who wrote and published an article regurgitating the complaint.

80.    On September 6, 2024, the District removed Ridgeway from her classroom at NEHS, reassigned her to remote work from home, and placed her under investigation.

81.    The District imposed this punishment to dissuade Ridgeway from exposing the District's JFA affiliations, harassment, the discrimination of Muslims and minorities, and to suppress Ridgeway's pro Palestine speech.

82.    The Mayor of Philadelphia also contacted Ridgeway and forced her to resign from her position on the City of Philadelphia's Muslim Engagement Commission.

### *Ridgeway Repeatedly Reported The District's Custom and Practice of Religious Discrimination and Racism*

83.    For a decade, Ridgeway and other African Americans and Muslims complained about the culture of islamophobia, racism, and discrimination at NEHS and pervasive throughout the District.

84.    The District's deliberate indifference to these complaints fostered an environment of hostility toward

Muslims and non-White persons at NEHS and throughout the District.

85.    In August 2016, Ridgeway and another Black, Muslim teacher complained to the District that a White teacher at NEHS, Christopher German (German), interrogated them about their religious affiliations and alleged they were terrorist. The District dismissed Ridgeway's complaint telling her "just ignore Chris…that's just how he is."

86.    In October 2017, a Palestinian student at NEHS, B.A., wore attire with the Palestinian flag on it during a school dress down day. B.A. complained to faculty and administration that Jewish teachers at NEHS were harassing her and demanding she remove her attire while students who wore attire displaying flags of other nations, including Isreal, were permitted to wear their attire.

87.    On or about March 12, 2019, D.A., a Muslim student at NEHS complained to faculty and administrators that Rochelle Robinson, a Jewish teacher at NEHS and editor of

the school newspaper, unfairly censored an article about Palestine D.A. submitted for publication while an article about Isreal submitted by a Jewish student went uncensored.

88.    In April of 2019, Muslim students at NEHS approached Ridgeway with the idea to have an Islamic Awareness week in advance of Ramadan. Ridgeway presented the idea to Crowder who approved.

89.    Upon learning of the event, White and Jewish teachers at NEHS complained and threatened to file a grievance against Crowder. White and Jewish teachers at NEHS stormed out of an assembly when Muslin students at NEHS spoke Arabic. The teachers complained to Crowder and others that they were uncomfortable because they did not know what the students were saying and the students made antisemitic statements.

90.    In 2020, students at NEHS complained that German called them "stupid" for expressing a political opinion that differed from his. Students also complained that German

said to them "you people will never get anywhere" referring to Black students when discussing the 2020 Presidential Election.

91.    In May 2021, Muslim and Palestinian students at NEHS approached Ridgeway with the idea of hosting an Ask A Palestinian Zoom event where all members of the NEHS community were invited to question Muslim and Palestinian students about recent events in Isreal and Palestine.

92.    Crowder approved the event. Thereafter, Robinson and other Jewish teachers complained that Crowder was Anti-Semitic for approving the event and threatened to have the NEHS Alumni Association pull scholarship funding.

93.    Crowder cancelled the event due to the complaints and threats.

94.    In or about 2023, the District and teachers, administrators, and staff showed immediate and unwavering support for fundraisers and speech at NEHS supporting Ukraine in the war against Russia.

95.    The District and teachers, administrators, and staff at NEHS supports speech and causes supporting Isreal in the conflict in Gaza.

96.    Upon information and belief, In or about June 11, 2024, two female, Muslim students at the Academy at Polumbo were sexually harassed while in the prayer room in the school library, and the prayer room was also vandalized.

97.    Upon information and belief, a member of JFA was involved with the harassment of the female Muslim students and the vandalization.

98.    On August 8, 2024, Ridgeway reported to the District that the environment at NEHS had become hostile toward her and other Muslims at NEHS, including students, following the Black History Month Assembly.

99.    The District uses public funds derived from federal, state, and local sources to carry out its mission to educate the students of Philadelphia.

100. The District has an obligation to the public to use taxpayer funds in a manner that provides the highest quality education to its students and to provide a workplace free from discrimination.

101. To meet this obligation, the District must permit racial, ethnic, religious, and cultural diversity in education and promote the free flow of ideas from employees and students.

102. Discrimination of District students and employees based on religion, race, color, ethnicity, or national origin is an issue of public concern.

103. Discrimination based on religion, race, ethnicity, color, ethnicity, or national origin constitutes wrongdoing.

104. The District's Employee Code of Ethics mandates, among other things, that District employees ": shall employ independent objective judgment in performing their duties, deciding all matters on the merits, free of partiality or prejudice and unimpeded by conflicts of interest or other improper influences…"

105.  The application of the District's Employee Code of Ethics to decision-making on matters of discrimination in education and reprimanding employees is an issue of public concern.

106. Violation of the District's Employee Code of Ethics constitutes wrongdoing.

107.  The District responded to Ridgeway's complaints by opening an investigation into her for antisemitism.

108. Less than a month after Ridgeway's August 8, 2024, complaint, and within a week of Ridgeway threatening to expose the Districts wrongdoing, the District removed Ridgeway from the classroom and placed her on remote work from home.

109. This punishment was retaliatory for Ridgeway's decade of complaints and her religious and political expression.

**The Biased and Unlawful Investigation**

110. In or about April 2024, The District, through the Office of General Counsel (OGC), retained the law firm King Spry to investigate JFA's false complaints of Anti Semitism against Ridgeway.

111. Ridgeway had three hearings related to the gun violence investigation. The last was an appeal before a hearing officer on December 16, 2024, which Ridgeway requested because she disagreed with the recommendations from the second hearing.

112. The District recommended a 5-day unpaid suspension, reassignment from NEHS with prejudice, notation in employment record, and termination for future violation of social media policy.

113. The District denied Ridgeway fair and impartial representation, either through union representation or private counsel, at the hearings. Michele Chapman told Ridgeway that her counsel could not represent her at the hearings.

114. Ridgeway terminated the non-lawyer representative offered to her for conflict of interest. Upon information and belief, the non-lawyer union rep had helped Lisa Appel circumvent district policy and get Sabbatical.

115. Moreover, upon Lisa Appel's return from Sabbatical, her private counsel was immediately permitted to represent her at hearings regarding the complaint that she recorded a student and released student information.

116. In or about November 2024, The Distric opened another investigation into Ridgeway (Pargamenik Investigation), alleging she improperly shared a social media post.

117. At a March 3, 2025, Hearing on the Pargamenik Investigation, regarding yet another frivolous allegation by JFA against Ridgeway, King Spry presented no evidence of Ridgeway liking or sharing a social media post despite repeated request for that information prior to and at the hearing.

118. Rather than focusing on the purpose of the hearing—whether Ridgeway shared a social media post—King Spry improperly attempted to cross examine Ridgeway about her religious and political views.

119. Also at the March 3, 2025, hearing, King Spry told Ridgeway that the investigation regarding complaints of gun violence was incomplete.

120. However, upon information and belief, King Spry had completed that investigation and submitted their report to the District on January 10, 2025.

121. Upon information and belief, at the direction of Dr. Watlington and OGC, the District arbitrarily and unreasonably withheld the findings of Ridgeway's investigation until Lisa Appel's investigation was completed.

122. On April 11, 2025, after more than 7 months of sitting home, the District finally sent Ridgeway the findings regarding allegations she made threats of gun violence. The District reassigned Ridgeway from NEHS to another school

with prejudice, suspended her without pay for 5 days, and issued her a written warning that further violations of the Districts social media policy would result in disciplinary action.

123. This punishment is designed to silence ridgeway from future political speech and dissuade her from making complaints regarding discrimination and inequitable treatment.

124. The wrongdoing Ridgeway threatened to expose concerned inequitable and unfair treatment based on religion, national origin, ethnicity, race, and color. The inequitable

treatment of Ridgeway and other Muslims and racial/ethnic minorities is to the detriment of District students, employees, and taxpayers.

## Causes of Action

## COUNT I – First and Fourteenth Amendment Retaliation - 42 U.S.C. § 1983

125. Plaintiff incorporates herein by reference paragraphs 1 through 123 above.

126. Defendants Watlington, Rauch, McCrimon, Gordon, Chapman, Skinner, Crowder, Jubilee, and Hill were aware of Ridgeway's repeated reports of discrimination and wrongdoing, her pro Palestine political view, and her political speech on social media.

127. Defendants ignored Ridgeway's reports and complaints of wrongdoing.

128. Defendants Watlington, Rauch, McCrimon, Gordon, Chapman, Skinner, Crowder, Jubilee, and Hill placed Ridgeway under investigation and reassigned her to remote work for over 8 months for engaging in first amendment protected speech.

129. Defendants Watlington, Rauch, Gordon, Chapman, McCrimon, Hill, Skinner, Jubilee, and Crowder acted through and on behalf of JFA and recommended permanent reassignment with prejudice, suspension without pay, and written warning against Ridgeway for her first amendment protected speech.

130. On April 11, 2025, Defendants reassigned Ridgeway from NEHS with prejudice, suspended her without pay, and issued Ridgeway a written warning for her first amendment protected speech.

131. Defendants acted under color of law when they recommended and reassigned Ridgeway with prejudice, suspended her without pay, and issued her written warning.

132. Defendants acted with callous disregard and/or deliberate indifference to Ridgeway's First Amendment right when they recommended and did reassign Ridgeway with prejudice, suspended her without pay, and issued her written warning.

WHEREFORE, Plaintiff, Keziah Ridgeway, prays for the following relief:

(a) an award of damages to compensate her for her economic loss.

(b) an award of compensatory damages to compensate her for her non-economic losses.

(c) an award for punitive damages.

(d) an award of costs and a reasonable attorney's fee; and

(e) Injunctive relief to stop ongoing and future retaliatio
(f) such other relief as the Court deems appropriate.

## COUNT II – Violation of Fifth and Fourteenth Amendment Due Process - 42 U.S.C. § 1983

133. Plaintiff incorporates herein by reference paragraphs 1 through 123 above.

134. Plaintiff, Ridgeway, had a fundamental right to earn a living as she was an employee of the District.

135. Defendants had a duty to provide Ridgeway fair and impartial counsel or permit Ridgeway to be represented by private counsel.

136. Defendants Watlington, Rauch, Hill, Gordon, Chapman, Skinner, Crowder, and McCrimon had a duty to complete Ridgeway's investigation in a fair, impartial, and timely manner.

137. Defendants Watlington, Rauch, Hill, Gordon, Chapman, Skinner, Jubilee, Crowder, and McCrimon deprived Ridgeway's fundamental right when they reassigned her from NEHS with prejudice, suspended her without pay, and issued her a written warning while denying her fair and impartial representation at hearings and arbitrarily and unreasonably delayed her investigation.

138. Defendants acted under color of law when they reassigned her from NEHS with prejudice, suspended her without pay, and issued her a written warning while denying her fair and impartial representation at hearings and arbitrarily and unreasonably delaying her investigation.

139. Defendants acted with callous disregard and/or deliberate indifference to Ridgeway's rights when they reassigned her from NEHS with prejudice, suspended her without pay, and issued her a written warning while denying her fair and impartial representation at hearings and arbitrarily and unreasonably delaying her investigation.

WHEREFORE, Plaintiff, Keziah Ridgeway, prays for the following relief:

(a) an award of damages to compensate her for her economic loss.

(b) an award of compensatory damages to compensate her for her non-economic losses.

(c) an award for punitive damages.

(d) an award of costs and a reasonable attorney's fee; and

(e) such other relief as the Court deems appropriate.


## COUNT III – 42 U.S.C. § 1983 - Violation of

## Fourteenth Amendment Equal Protection

140. Plaintiff, Ridgeway, incorporates herein by reference paragraphs 1 through 123 above.

141. Ridgeway is a Muslim and African American, both protected classes under the law.

142. Defendants Watlington, Rauch, Hill, Gordon, Chapman,, skinner, Jubilee, Crowder, and McCrimon acted through and on behalf of JFA to constantly investigate Ridgeway for her pro Palestine speech and beliefs, and the Defendants suppressed her and/or dissuaded her pro Palestine speech by investigating and reprimanding her.

143. Conversely, similarly situated non-Muslim, non-African Americans were permitted to freely express pro Isreal speech.

144. Moreover, the Defendants treated Ridgeway differently than Lisa Appel, a non-Muslim, non- African-American. The District permitted Appel to take Sabbatical rather than reassignment pending investigation. Appel was also permitted to have her private attorney represent her in investigative hearings.

145. Defendants treated Ridgeway differently than Appel and others because of her religious beliefs and her speech regarding her religious and political beliefs, status as a Muslim, and her status as an African American.

146. Defendants acted under color of law.

147. Defendants acted with callous disregard and/or deliberate indifference to Ridgeway's constitutional rights.

WHEREFORE, Plaintiff, Keziah Ridgeway, prays for the following relief:

(a) an award of damages to compensate her for her economic loss.

(b) an award of compensatory damages to compensate her for her non-economic losses.

(c) an award for punitive damages.

(d) an award of costs and a reasonable attorney's fee; and

(e) such other relief as the Court deems appropriate.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

148. Plaintiff incorporates herein by reference paragraphs 1 through 123 above.

149. Defendants Watlington, Rauch, Gordon, Skinner, Chapman, McCrimon, Hill, Jubilee, and Crowder were aware of the harassment of Ridgeway by JFA, and defendants acted through and on behalf of JFA to intentionally harass, discriminate, retaliate, and deprive Ridgeway of her right to due process and equal protection.

150. Defendants' intentional harassment, discrimination, retaliation, and deprivation of Ridgeway was outrageous and egregious.

151. As a result of defendants intentional, outrageous, and egregious conduct, Ridgeway has suffered severe emotional distress including severe anxiety and depression.

WHEREFORE, Plaintiff, Keziah Ridgeway, prays for the following relief:

(a) an award of damages to compensate her for her economic loss.

(b) an award of compensatory damages to compensate her for her non-economic losses.

(c) an award for punitive damages.

(d) an award of costs and a reasonable attorney's fee; and

(e) such other relief as the Court deems appropriate.

## COUNT V - Pennsylvania Whistleblower Law

## 43 PA. CONS. STAT. § 1421, *et seq.*

152. Plaintiff incorporates herein by reference paragraphs 1 through 123 above.

153. Defendants Watlington, Rauch, Hill, Gordon, Chapman, Skinner, McCrimon, Jubilee and Crowder acted through and on behalf of JFA and Reassigned Ridgeway from her position at NEHS with prejudice, suspended her without pay, and issued her a written warning because she made good faith reports of wrongdoing to the District or the proper authority.

WHEREFORE, Plaintiff, Keziah Ridgeway, prays for the following relief:

(a) an award of damages to compensate her for her economic loss.
(b) an award of compensatory damages to compensate her for her non-economic losses.

(c) an award for punitive damages.

(d) an award of costs and a reasonable attorney's fee; and

(e) such other relief as the Court deems appropriate.

Respectfully,

BY:*/s/ Spencer Hill*_____

Spencer A. Hill, Jr., Esq. No.325787

spencer@spencerhilllaw.com

215-313-7026

Mu'min F. Islam, Esq. No. 208979

**The Law office of Spencer Hill, PLLC**

*Attorneys for Keziah Ridgeway*

1628 W. Thompson Street, Ste. 1,

Philadelphia, PA 19121

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
|  | : |  |
| KEZIAH RIDGEWAY | : |  |
| *Plaintiff,* | : |  |
| vs. | : | **No.** |
|  |  | **TRIAL BY JURY DEMANDED** |
|  | : |  |
| THE SCHOOL DISTRICT OF PHILADELPHIA, *et al* | : |  |
| *Defendants.* | : |  |

## <u>Certification</u>

I certify that the statements herein are true and correct to the best of my knowledge, information, and belief. I understand that false statements are made under penalty of perjury.


*/s/ Keziah Ridgeway*
Keziah Ridgeway