**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KEZIAH RIDGEWAY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:25-cv-02440-WB |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

**AND NOW**, this _____ day of _____, 2026,

upon consideration of the Motion for Judgment on the Pleadings ("Motion") filed by Defendants,

the School District of Philadelphia, Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy

Grant Skinner, Subriya Jubilee, Michelle Chapman, and Omar Crowder (collectively, the

"Defendants"), and any response or reply thereto, it is hereby **ORDERED** that Defendants'

Motion is **GRANTED**, such that the following claims are **DISMISSED WITH PREJUDICE**:

1. The Intentional Infliction of Emotional Distress claims against Defendants Watlington,
   Gordon, Rauch, Grant-Skinner, Chapman, Jubilee, and Crowder in their official and
   individual capacities; and

2. The Pennsylvania Whistleblower Law claims, pursuant to 43 Pa. C.S.A. § § 1421, *et seq.*,
   against Defendants Gordon and Grant-Skinner in their official and individual capacities.

**BY THE COURT:**

_____
The Honorable Wendy Beetlestone, Chief Judge

#125526329v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEZIAH RIDGEWAY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:25-cv-02440-WB |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS THE SCHOOL DISTRICT OF PHILADELPHIA, TONY B. WATLINGTON, LYNN RAUCH, RICHARD GORDON, JEREMY GRANT SKINNER, SUBRIYA JUBILEE, MICHELLE CHAPMAN, AND OMAR CROWDER'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, the School District of Philadelphia, Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, and Omar Crowder (collectively, the "Defendants")[1], by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(c), hereby file this Motion for Judgment on the Pleadings. Defendants incorporate their accompanying Memorandum of Law in Support of the Motion by reference as if fully set forth herein.

Dated: March 30, 2026

/s/ Marjorie McMahon Obod
Marjorie McMahon Obod
Margaret Spitzer Persico
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103
(215) 575-7000

*Attorneys for Defendants, School District of Philadelphia, Tony B. Watlington, Lynn Rauch,*

---

[1]    All claims alleged against Defendants Nadia McCrimon and Oz Hill were dismissed via this Court's Order, dated January 13, 2026, and accompanying Memorandum Opinion. *Ridgeway v. Sch. Dist. of Philadelphia*, No. 25-2440, 2026 WL 94617 (E.D. Pa. Jan. 13, 2026).

#125526329v1

3

*Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, Nadia McCrimon, Oz Hill, and Omar Crowder*

#125526329v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| KEZIAH RIDGEWAY, | : |
|  | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : No. 2:25-cv-02440-WB |
|  | : |
| THE SCHOOL DISTRICT OF | : |
| PHILADELPHIA, et al | : |
|  | : |
| Defendants. | : |
|  | : |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS THE SCHOOL DISTRICT OF PHILADELPHIA, TONY B.**
**WATLINGTON, LYNN RAUCH, RICHARD GORDON, JEREMY GRANT**
**SKINNER, SUBRIYA JUBILEE, MICHELLE CHAPMAN,**
**AND OMAR CROWDER'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: March 30, 2026

*/s/ Marjorie McMahon Obod*
Marjorie McMahon Obod
Margaret Spitzer Persico
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103
(215) 575-7000

*Attorneys for Defendants, School District of Philadelphia, Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, Nadia McCrimon, Oz Hill, and Omar Crowder*

4

#125526329v1

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ii

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.   PLAINTIFF'S ALLEGATIONS ........................................................................ 2

III.  LEGAL STANDARD .......................................................................................... 5

IV.   LEGAL ARGUMENT ......................................................................................... 6

   A.    The High Public Official Immunity Bars Plaintiff's IIED Claim Against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Jubilee, and Chapman and Whistleblower Claim Against Defendants Gordon and Grant-Skinner. ......................................................... 6

   B.    Plaintiff's IIED Claim Against Watlington, Rauch, Gordon, Grant-Skinner, Jubilee, Chapman, and Crowder Fails as a Matter of Law Because Plaintiff Has Not Alleged that Defendants' Actions Were Extreme or Outrageous. ........................................................... 16

V.    CONCLUSION ................................................................................................... 21

#125526329v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. PW-Philadelphia Wkly.*,
  980 A.2d 215 (Pa. Commw. 2009) ......................................................................................11

*Appel v. Twp. of Warwick*,
  828 A.2d 469 (Pa. Commw. 2003) .......................................................................................7

*Batgos v. Calloway*,
  316 A.3d 661 (Pa. Commw. 2024) ........................................................................................6

*Beverly Enters., Inc. v. Trump*,
  182 F.3d 183 (3d Cir. 1999)........................................................................................11, 13, 14

*Brown v. Amer. Airlines, Inc.*,
  723 F. Supp. 3d 411 (E.D. Pa. 2024) ..................................................................................17

*Caristo v. Blairsville-Saltsburg Sch. Dist.*,
  370 F. Supp. 3d 554 (W.D. Pa. 2019)............................................................................... *passim*

*Cole v. Cent. Greene Sch. Dist.*,
  No. 19-0375, 2019 WL 7283130 (W.D. Pa. Dec. 27, 2019) ...................................................10

*Cox v. Keystone Carbon Co.*,
  861 F.2d 390 (3d Cir. 1988)................................................................................................16

*Doe v. Cumberland Valley Sch. Dist.*,
  No. 25-0158, 2026 WL 21364 (M.D. Pa. Jan. 5, 2026)..........................................................9

*Doe v. Franklin Cnty.*,
  174 A.3d 593 (Pa. 2017) ..............................................................................................6, 7

*Durham v. McElynn*,
  772 A.2d 68 (Pa. 2001) ..........................................................................................7, 8, 11, 13

*Feldman v. Hoffman*,
  107 A.3d 821 (Pa. Commw. 2014) ...........................................................................7, 8, 16

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  108 S. Ct. 562 (U.S. 1988)...............................................................................................20

*Holt v. Nw. Pa. Training P'ship Consortium, Inc.*,
  694 A.2d 1134 (Pa. Commw. 1997) ...................................................................................8, 16

*Hoy v. Angelone*,
  720 A.2d 745 (Pa. 1998) ...................................................................................................17

ii

*Hunter v. Bryant*,
    112 S.Ct. 534 (U.S. 1991) (*per curiam*) ......................................................................5

*Jeanjacques v. AMC Ent. Holdings, Inc.*,
    No. 21-3670, 2021 WL 4478665 (E.D. Pa. Sept. 30, 2021) ......................................17

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (U.S. 2022)........................................................................................19

*Klatch-Maynard v. Sugarloaf Twp.*,
    No. 06-845, 2012 WL 3597185 (M.D. Pa. Aug. 20, 2012) ......................................10

*Mollan v. Lindner*,
    677 A.2d 1194 (Pa. 1996) .............................................................................................7

*N'Jai v. Pittsburgh Bd. of Pub. Educ.*,
    487 F. App'x 735 (3d Cir. 2012) ...........................................................................17, 21

*Osiris Enters. v. Borough of Whitehall*,
    877 A.2d 560 (Pa. Commw. 2005) ...............................................................................8

*Pearson v. Callahan*,
    129 S. Ct. 808 (U.S. 2009)............................................................................................5

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.3d 1192 (3d Cir. 1993)......................................................................................11

*Schroeck v. Pa. State Police*,
    362 A.2d 486 (Pa. Commw. 1976) ...............................................................................8

*Smith v. Sch. Dist. of Philadelphia*,
    112 F. Supp. 2d 417 (E.D. Pa. 2000) .............................................................. *passim*

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
    903 F.3d 333 (3d Cir. 2018)..........................................................................................5

*Zimmerman v. Corbett*,
    873 F.3d 414 (3d Cir. 2017)..........................................................................................5

**Statutes**

Pennsylvania Whistleblower Law, 43 Pa. C.S.A. §§ 1421, *et seq.*...................................6

**Other Authorities**

Fed. R. Civ. P. 12..............................................................................................................11

Fed. R. Civ. P. 12(c) .....................................................................................................5, 18

iii

#125526329v1

iv

Data & Demographics, The School District of Philadelphia,
https://www.philasd.org/about/#datademographics (last visited March 30,
2026) ....................................................................................................................12

Superintendent Watlington Announces New Appointments, The School District
of Philadelphia, https://www.philasd.org/blog/2023/05/22/superintendent-
watlington-announces-appointment-of-new-deputy-superintendent-and-chief-
of-curriculum-and-instruction/ (last visited March 30, 2026) .................................13

Office of the General Counsel, The School District of Philadelphia,
https://www.philasd.org/generalcounsel/ (last visited March 30, 2026) .................11

Office of the General Counsel, The School District of Philadelphia,
https://www.philasd.org/generalcounsel/#contactus (last visited March 30,
2026) ....................................................................................................................12

Meet Our Leadership, The School District of Philadelphia,
https://www.philasd.org/leadership/#leadershipteam (last visited March 30,
2026) ....................................................................................................................14

Meet Our Leadership, The School District of Philadelphia,
https://www.philasd.org/leadership/#orgchart (last visited March 30, 2026).........14

Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965) ............................17, 19

#125526329v1

Defendants the School District of Philadelphia ("School District"), Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, and Omar Crowder (collectively the "Individual Defendants" and together with the School District, the "Defendants")[2] submit this Memorandum of Law in support of their Motion for Judgment on the Pleadings ("Motion"), filed pursuant to Federal Rule of Civil Procedure 12(c), as it relates to the First Amended Complaint of Plaintiff Keziah Ridgeway ("Amended Complaint").

## I.    PRELIMINARY STATEMENT

Plaintiff sues her current employer, the School District, and nine of its employees and officers.  She alleges that she was reprimanded because she "spoke out on issues of public concern and reported instances of wrongdoing." *See generally*, Amended Complaint, Docket No. 12 ("Am. Compl") at ¶ 1.

In the Court's recent ruling on Defendant's Motion to Dismiss her Amended Complaint, the Court dismissed a number of Plaintiff's claims. *Ridgeway v. Sch. Dist. of Philadelphia*, No. 25-2440, 2026 WL 94617 (E.D. Pa. Jan. 13, 2026).  Certain of Plaintiff's claims remain against some Individual Defendants, including for (1) intentional infliction of emotional distress ("IIED") against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Jubilee, Chapman, and Crowder and (2) a Pennsylvania Whistleblower Law claim, pursuant to 43 Pa. C.S.A. §§ 1421, *et seq*., against Defendants Gordon and Grant-Skinner.

Defendants' present Motion seeks to dismiss with prejudice the IIED and Whistleblower claims against the remaining Individual Defendants for two reasons.  First, the claims against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Jubilee, and Chapman are barred by the

---

2    All claims alleged against Defendants Nadia McCrimon and Oz Hill were dismissed via this Court's Order, dated January 13, 2026, and accompanying Memorandum Opinion. *Ridgeway v. Sch. Dist. of Philadelphia*, No. 25-2440, 2026 WL 94617 (E.D. Pa. Jan. 13, 2026).  To the extent necessary, Defendants reserve the right to raise all arguments set forth below and otherwise with regard to McCrimmon and Oz.

high public official immunity. As will be detailed below, Plaintiff's allegations against each clearly establish their entitlement to this immunity, insofar as Plaintiff alleges the Individual Defendant's official role for the School District—all of which qualify as "public officials"—and that each was acting and/or speaking within the scope, authority, and duties of their respective roles at all relevant times.

Second, Plaintiff's IIED claim, as pled against Defendants Watlington, Rauch, Gordon, Grant-Skinner, Jubilee, Chapman, and Crowder does not, as a matter of law, rise to the level of extreme or outrageous necessary to sustain such a claim. Plaintiff's own allegations, as recounted below, make this plain. For these reasons, Defendants respectfully request that the Court dismiss these claims with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS[3]

As stated in the Amended Complaint, Plaintiff is a current employee of the School District, who was employed as a teacher at Northeast High School ("NEHS"). Am. Compl. ¶ 2. She is a Muslim woman of African-American descent. *Id.* at ¶ 16. Plaintiff's Amended Complaint details her "public support of Palestinians during the war on Gaza." *Id.* at ¶ 22. The Amended Complaint makes clear that Plaintiff has been publicly vocal about her support of Islamic and Palestinian rights for years prior to any alleged adverse action at issue in the instant action. *Id.* at ¶¶ 88, 91.

In or around December 2023, a group of "Pro-Israel and Jewish District employees and community members" formed a group called the School District of Philadelphia Jewish Families Alliance ("JFA"). *Id.* at ¶ 35. According to Plaintiff's Amended Complaint, JFA used its social media page to "defame [her] by calling her antisemitic." *Id.* at ¶ 36. While Plaintiff does allege

---

[3]    The facts as pled in Plaintiff's Amended Complaint are accepted as true only for the purposes of this Motion.

that some School District employees are members of JFA, she does not allege that this group was created or maintained by the School District or any of the Individual Defendants. *Id.* at ¶ 37.

Plaintiff alleges that around the Spring of 2024, she was assigned to present on African Diaspora International Solidarity at the Africana Studies Lecture Series for the Social Studies Department, and learning of same, the JFA complained to the School District. *Id.* at ¶¶ 60, 61. According to Plaintiff, Jubilee, the School District's Chief Equity Officer; Grant-Skinner, the School District's Deputy of Talent, Strategy, and Culture; and Rauch, the School District's General Counsel, then requested that Plaintiff submit her presentation slides for inspection prior to the event. *Id.* at ¶¶ 5, 7, 8, 61. Plaintiff states that Jubilee and Rauch purportedly edited Plaintiff's presentation to remove references to Palestine and directed another to monitor Plaintiff's actual presentation. *Id.* at ¶¶ 63, 65. Plaintiff claims that Jubilee posted in the JFA social media group that references to Palestine were removed from Plaintiff's presentation. *Id.* at ¶ 64.

Plaintiff further contends that, at some point around or after April 2024, Grant-Skinner "opened an investigation into Ridgeway for her pro Palestine social media post." *Id.* at ¶ 67. Around this time, Plaintiff was made aware that JFA sent approximately 1,500 emails accusing Plaintiff of antisemitism. *Id.* at ¶ 58. Plaintiff also states that Crowder, NEHS's Principal, investigated another School District employee, Lisa Appel, based on complaints against Ms. Appel. ¶¶ 12, 69. Unlike Plaintiff, who was investigated after posting with reference to a gun and "part two" being "about to drop," Ms. Appel was investigated for an accusation of recording and posting a student presentation regarding Palestine in the JFA social media group in April 2024. *Id.* at ¶¶ 53-54, 69. Plaintiff states that Watlington, the School District's Superintendent, and the Office of General Counsel withheld the findings of its investigation into Plaintiff until its investigation into Ms. Appel was completed. *Id.* at ¶¶ 4, 121.

3

#125526329v1

Plaintiff acknowledges that in or around August 2024, she gained access to JFA's "private social media page and saw who was responsible," *Id.* at ¶ 75, and, based on that, created her own social media post ("Gun Post") stating, "ain't no fun when the rabbit got the gun." *Id.* at ¶ 76. Plaintiff states "part two" was her intention to expose "individual District employees for their JFA affiliation." *Id.* at ¶ 77. Plaintiff alleges that JFA complained to the School District about the Gun Post alleging that it "threatened gun violence." *Id.* at ¶¶ 23, 78. Plaintiff also alleges that the School District received complaints from multiple organizations who felt threatened by Plaintiff's Gun Post. *Id.* at ¶¶ 78-79.

On or around September 6, 2024, Crowder and Gordon, a School District Assistant Superintendent, placed Plaintiff on paid administrative leave pending the School District's investigation into the alleged threatened gun violence. *Id.* at ¶¶ 6, 21-23, 80. Plaintiff states both that she was placed on "paid administrative leave," and that she was placed on remote work from home during this time. *Id.* at ¶¶ 80, 108. During the "gun violence investigation," Plaintiff acknowledges she had three hearings before being disciplined. *Id.* at ¶ 111. The last hearing was an appeal she requested because she disagreed with the recommendations from the second hearing. *Id.* While Plaintiff alleges she was denied legal representation at the hearings by Chapman, Plaintiff acknowledges that *she personally* terminated the non-lawyer union representative that was offered to her. *Id.* at ¶¶ 113-114. Ultimately, on April 11, 2025, following the investigation into the Gun Post, the School District reassigned Plaintiff to a different high school, suspended her without pay for five days, and issued her a written warning. *Id.* at ¶ 122.

Plaintiff filed an Amended Complaint on June 24, 2025, in response to which the Defendants filed a Motion to Dismiss. On January 13, 2026, this Honorable Court granted in part and denied in part Defendants' Motion to Dismiss. On February 10, 2026, Defendants filed an

4

Answer with regard to the remaining claims. Defendants now file the present Motion for Judgment on the Pleadings.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." When reviewing a motion for judgment on the pleadings, a court views all of the allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017). Judgment on the pleadings should be granted when "the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 349 (3d Cir. 2018).

The United States Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009) (citing *Hunter v. Bryant,* 112 S.Ct. 534, 536 (U.S. 1991) (*per curiam*)). Resolving immunity issues early is imperative because "the entitlement is an *immunity from suit* rather than a mere defense to liability." *Hunter*, 112 S.Ct. at 536 (emphasis in original). Thus, motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), are an appropriate juncture for courts to consider and rule upon particular immunities, such as the high public official immunity, when such are established on the face of the complaint. *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 426 (E.D. Pa. 2000); *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 562 (W.D. Pa. 2019).

5

## IV.    LEGAL ARGUMENT

### A.    The High Public Official Immunity Bars Plaintiff's IIED Claim Against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Jubilee, and Chapman and Whistleblower Claim Against Defendants Gordon and Grant-Skinner.

The high public official immunity bars Plaintiff's claims for (1) IIED against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Jubilee, and Chapman[4] and (2) the Pennsylvania Whistleblower Law, 43 Pa. C.S.A. §§ 1421, *et seq*., against Defendants Gordon and Grant-Skinner. In accordance with this immunity, each Individual Defendant (1) qualifies as a "high public official" in their respective roles and (2) all actions and statements alleged against each occurred in the course of each acting within the scope of their respective official duties, power, and authorities.  *Caristo*, 370 F. Supp. 3d at 561.  Therefore, Defendants respectfully request that the Court dismiss these claims with prejudice.

Pursuant to Pennsylvania law, "high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority."  *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017).  This "absolute immunity applies if (1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his authority."  *Caristo*, 370 F. Supp. 3d at 561 (citing *Mollan v. Lindner*, 677 A.2d 1194, 1199 (Pa. 1996)).

The purpose of this immunity "is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the **public** he or she serves."  *Franklin Cnty.*,

---

[4]    Defendants recognize that the high public official immunity has not been applied to protect school principals.  *Batgos v. Calloway*, 316 A.3d 661 (Pa. Commw. 2024) (collecting cases).  Therefore, Defendants' present Motion does not seek dismissal of the IIED and Whistleblower claims on this basis against Defendant Crowder, as NEHS's principal.  Am. Compl. ¶ 12.

6

174 A.3d at 603 (emphasis in original). The Pennsylvania Supreme Court has explained that "absolute immunity for high public officials from civil liability is the only legitimate means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Id*.; *Mollan,* 677 A.2d at 1196 (internal citation and quotation marks omitted); *see Appel v. Twp. of Warwick,* 828 A.2d 469, 474 (Pa. Commw. 2003) (noting the purpose of the immunity is protecting the public's right to full disclosure of facts and conduct of government business). As will be detailed below, this immunity applies to bar Plaintiff's IIED and Whistleblower claims against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Chapman, and Jubilee.

As for the first requisite element of the high public official immunity, Defendants Watlington, Gordon, Rauch, Grant-Skinner, Chapman, and Jubilee each qualifies as a "high public official" in their respective roles. "The determination of whether a particular individual qualifies as a 'high-ranking public official' must be [considered] on a case-by-case basis." *Feldman v. Hoffman*, 107 A.3d 821, 827 (Pa. Commw. 2014). This determination "depend[s] upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Caristo*, 370 F. Supp. 3d at 562. That said, the Pennsylvania "Supreme Court . . . clarified that having a policy-making function is not the sole or overriding factor in determining the scope of absolute immunity." *Feldman*, 107 A.3d at 827 (citing *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001)). "Rather, it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal." *Durham*, 772 A.2d at 70.

As for the second requisite element of the high public official immunity, Plaintiff's allegations against Watlington, Gordon, Rauch, Grant-Skinner, Chapman, and Jubilee show that their "statements made or actions taken were in the course of the official's duty or power and

7

within the scope of his authority." *Caristo*, 370 F. Supp. 3d at 561. Whether a high public official was acting within the scope of his or her authority for absolute immunity purposes is contingent upon whether the conduct at issue was "closely related" to the performance of official duties. *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Commw. 2005).

As is indicated by the authority cited herein, the absolute high-public-official immunity is **absolute**—it exists to shield high public officials from liability even when they have acted imperfectly. For example, this immunity applies when a public official is alleged to have engaged in the IIED, presented false statements, or committed a malicious and false prosecution. *E.g.*, *Smith*, 112 F. Supp. 2d at 426 (predicting that the Pennsylvania Supreme Court would apply the high public official immunity in suits alleged IIED, and in doing so, dismissing said claims against the high public officials); *Durham*, 772 A.2d at 69 (granting absolute high-public-official immunity to assistant district attorney in suit alleging that he allowed perjured testimony to be used and prevented the presentation of witnesses); *Schroeck v. Pa. State Police*, 362 A.2d 486, 488 (Pa. Commw. 1976) (granting absolute high-public-official immunity in case alleging "invasion of privacy, false arrest and malicious prosecution").

The immunity also applies when a public official is alleged to have engaged in willful misconduct. *E.g.*, *Feldman*, 107 A.3d at 824 (granting absolute high-public-official immunity to coroner in case alleging willful misconduct); *Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. 1997) (holding that high public officials have "absolute immunity even when willful misconduct is alleged"). As will be detailed below, each of the Individual Defendants both qualifies as a high public official and, as alleged by Plaintiff, was acting and/or speaking within the scope of their official duties. Thus, each is entitled to invoke high public official immunity to bar the IIED and Whistleblower claims alleged against them.

8

### a. Watlington, as the School District's Superintendent, Is Entitled to Immunity.

As the School District's Superintendent, Watlington qualifies for the high public official immunity. Regarding the first element of this immunity, "[s]everal courts in this circuit have held that school district superintendents qualify as high public officials." *Doe v. Cumberland Valley Sch. Dist.*, No. 25-0158, 2026 WL 21364, at *19 (M.D. Pa. Jan. 5, 2026) (citing *Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 563 (E.D. Pa. 2013); *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002); *Smith*, 112 F. Supp. 2d at 425; and *Brazil v. Scranton Sch. Bd.*, No. 22-1514, 2023 WL 5916470, at *4 (M.D. Pa. Sept. 11, 2023)). Here, Plaintiff has alleged that Watlington was "[a]t all times relevant to [her] complaint," the "Superintendent of Schools/Chief Executive Officer for the District." Am. Compl. at ¶ 4. Thus, Watlington, as Superintendent, qualifies as a high public official.

Regarding the second element of the high public official immunity, Plaintiff's allegations against Watlington relate to his involvement in and reporting of the School District's findings from its investigations into Plaintiff's conduct, and that of non-party, teacher Ms. Appel. Am. Compl. at ¶ 121. Specifically, Plaintiff alleges that Watlington directed that the School District withhold its investigatory findings about Plaintiff's conduct until after the School District completed its investigation into Ms. Appel's conduct. *Id.* All of this conduct falls flatly within "statements made or actions taken . . . in the course of [Watlington]'s duty or power and within the scope of his authority [as Superintendent]." *Caristo*, 370 F. Supp. 3d at 561. Therefore, Watlington is entitled to the high public official immunity and the IIED claim against him should be dismissed.

### b. Gordon, as the School District's Assistant Superintendent, Is Entitled to Immunity.

As a School District Assistant Superintendent, Gordon qualifies for the high public official immunity. As for the first element of this immunity, Gordon qualifies as a high public official in

his role.  At least one court within this circuit has already acknowledged that "[i]t is clear . . . that high public official immunity would apply to [the defendant, School District] Superintendent . . . and [the defendant, School District] Assistant Superintendent . . ." *Cole v. Cent. Greene Sch. Dist.*, No. 19-0375, 2019 WL 7283130, at *14 n.8 (W.D. Pa. Dec. 27, 2019) (citing to *Zugarek*, 214 F.Supp.2d at 479).  Here, Plaintiff has alleged in her Amended Complaint that Gordon was "[a]t all times relevant to [her] complaint," the "Assistant Superintendent for the District . . ."  Am. Compl. at ¶ 6.  Thus, Gordon, as an Assistant Superintendent, qualifies as a high public official.

Regarding the second element of the high public official immunity, Plaintiff's allegations against Gordon relate to his involvement in: (1) commenting about the School District's alleged censorship of Plaintiff's presentation on the African Diaspora International Solidarity, Am. Compl. at ¶ 57; (2) the School District's investigation into Plaintiff's conduct and Gun Post, *id.* at ¶¶ 21-23, 110-111; and (3) the School District's ultimate decisions to place Plaintiff on administrative leave, remove Plaintiff from her classroom, and assign to her remote work.  *Id.* at ¶¶ 21, 80, 108, 149, 153.  As alleged, Gordon performed all of these actions and made these statements within his role and authority as a School District Assistant Superintendent.  Therefore, Gordon is entitled to the high public official immunity, and the IIED and Whistleblower claims against him should be dismissed.

### c.  Rauch, as the District's General Counsel, Is Entitled to Immunity.

As the School District's General Counsel, Rauch qualifies for the high public official immunity.  As for the first element of this immunity, this role qualifies as a high public official. Numerous courts within this circuit and within the Commonwealth of Pennsylvania have determined that particular attorneys employed by the Commonwealth or applicable township or school district qualified as high public officials.  *See Klatch-Maynard v. Sugarloaf Twp.*, No. 06-845, 2012 WL 3597185, at *3 (M.D. Pa. Aug. 20, 2012) (concluding that a township solicitor

10

qualified as a high public official); *Durham*, 772 A.2d at 70 (concluding that a county assistant district attorney qualified as a high public official); *Alston v. PW-Philadelphia Wkly.*, 980 A.2d 215, 218 (Pa. Commw. 2009) (noting that a city solicitor was immune as a high public official). Recently, in *Caristo*, the court held that a school board's attorney (named therein as a "solicitor") still qualified as a high public official for purposes of this immunity because "while they may not have a strong policy-making function, []it is the public interest in seeing that the official not be impeded in the performance of important duties." 370 F. Supp. 3d at 565 (citation omitted).

Here, Plaintiff has alleged in her Amended Complaint that Rauch was "[a]t all times relevant to [her] complaint," the "General Counsel for the District [and] [i]n this capacity[,] she reported to Defendant Watlington and the Board of Directors/Trustees for the District." Am. Compl. at ¶ 5. Moreover, in her role as legal counsel for the entire School District, it is imperative that Rauch not be impeded in her performance of her numerous important duties, including, but not limited to, "provid[ing] high-quality legal advice and representation on litigation and transactional matters affecting the School District, Intermediate Unit 26, and the Board of Education." *See* https://www.philasd.org/generalcounsel/ (last visited February 5, 2026).[5]

The role of the School District's General Counsel is also of particular importance based on the massive size of the School District, which includes 330 schools, over 198,000 students, and an

---

[5]     The Court may consider matters of public record on a motion for judgment on the pleadings without converting the Rule 12 motion into a motion for summary judgment. *See Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999) (holding that a court may consider "matters of public record" on a F.R.Civ.P. Rule 12 motion without converting the motion to one for summary judgment); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.3d 1192, 1196 (3d Cir. 1993) (acknowledging that, in evaluating the facial plausibility of a complaint, "courts can generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss [and for judgment on the pleadings], to include . . . published reports of administrative bodies." *Pension Ben.*, 998 F.2d at 1197 (collecting cases). Here, the School District's description of its Office of General Counsel is publicly available online. Because Plaintiff's Amended Complaint describes her interactions with Rauch in her capacity as the School District's General Counsel, the Court may consider the School District's publicly available website in resolving the present Motion for Judgment on the Pleadings.

#125526329v1

extensive number of teachers and staff needed to support these schools and students. *See* https://www.philasd.org/about/#datademographics (last visited February 6, 2026). In performing her duties as *the* head attorney for the entire School District, Rauch is also responsible for overseeing at least forty-six (46) attorneys and/or staff members within the School District's Office of General Counsel. Her oversight spans across six (6) different legal sub-departments, including Compliance & Ethics; Right to Know Law; Litigation, Labor and Employment; Contracts/Transactional; Charter School and Real Estate Matters; and Special Education/Individual Student Services. *See* https://www.philasd.org/generalcounsel/#contactus (last visited February 6, 2026). For these reasons, Rauch, as the School District's General Counsel, qualifies as a high public official.

As for the second element of the high public official immunity, Plaintiff's only allegations against Rauch relate to Rauch's involvement in the School District's review of and alleged censorship of Plaintiff's presentation on the African Diaspora International Solidarity and the School District's later monitoring of Plaintiff's presentation. Am. Compl. at ¶¶ 60-63, 65. Construing these facts in the light most favorable to Plaintiff, Rauch performed these actions within the scope of her role as the lead attorney for the School District and in furtherance of her official duties. *Caristo*, 370 F. Supp. 3d at 561. Therefore, the IIED and Whistleblower claims against Rauch must be dismissed based on the high public official immunity.

### d. Grant-Skinner, as the School District's Deputy of Talent, Strategy, and Culture, Is Entitled to Immunity.

As the School District's Deputy of Talent, Strategy, and Culture, Grant-Skinner qualifies for the high public official immunity. Regarding the first element of this immunity, Plaintiff alleges that Grant-Skinner was "[a]t all times relevant to [her] complaint," the "Deputy of Talent, Strategy, and Culture for the District [and] [i]n this role[,] he reported to Defendant[] Watlington,

12

. . . ." Am. Compl. at ¶ 7. In reporting directly to the School District's Superintendent, Grant-Skinner in this role is tasked with:

> [O]verhauling the recruiting strategy, reducing onboarding time for new hires, implementing a plan to train and develop staff across all job roles, develop an evaluation system for all central office departments, and assist the superintendent in transforming the district into a more collaborative, trusted, and results-oriented culture that recognizes and better supports school leadership teams as the unit of change.

*See* https://www.philasd.org/blog/2023/05/22/superintendent-watlington-announces-appointment-of-new-deputy-superintendent-and-chief-of-curriculum-and-instruction/ (last visited February 9, 2026).[6] Moreover, the School District's "Deputy Superintendent of Talent, Strategy, and Culture replaces the previous Deputy Superintendent of Operations role." *Id.*

In other words, this role requires that Grant-Skinner work hand in hand with the Superintendent to establish, implement, and govern the School District's policies for recruiting staff at all levels and roles across the School District, training those individuals upon hire, and developing and implementing performance evaluation systems for all School District central office staff. *Id.* There is a significant "public interest in seeing that [Grant-Skinner, in this role,] not be impeded in the performance of [these] important duties that [are] pivotal." *Durham*, 772 A.2d at 70. For these reasons, Grant-Skinner, as the School District's Deputy of Talent, Strategy, and Culture, qualifies as a high public official.

As for the second element of the high public official immunity, Plaintiff's allegations against Grant-Skinner relate to Grant-Skinner's involvement in: (1) the School District's

---

[6]    For the same reasons articulated in Footnote 5, *supra*, the Court may consider this website as a public record without converting this motion into a one for summary judgment. *Beverly*, 182 F.3d at 190 n.3. Here, the School District's description of its Deputy of Talent, Strategy, and Culture role is publicly available online. Because Plaintiff's Amended Complaint describes her interactions with Grant-Skinner in his capacity as the School District's Deputy of Talent, Strategy, and Culture, the Court may consider the School District's publicly available website in resolving the Motion for Judgment on the Pleadings.

13

investigation into Plaintiff's conduct and Gun Post, *id.* at ¶¶ 21-23, 67, 110-111; (2) his or the School District's purported failure to "hold a forum wherein Jewish, Palestinian, Haitian, and Sudanese students could voice their concerns after complaints about the discriminatory culture at NEHS," *id.* at ¶ 72; and (3) the School District's ultimate decisions to place Plaintiff on administrative leave, remove Plaintiff from her classroom, and assign her to remote work. *Id.* at ¶¶ 80, 108, 149, 150, 153. As alleged, Grant-Skinner performed all of these actions within his role and authority as the School District's Deputy of Talent, Strategy, and Culture. Therefore, Grant-Skinner is entitled to the high public official immunity, and the IIED and Whistleblower claims against him should be dismissed.

### e. Jubilee, as the School District's Chief Equity Officer, Is Entitled to Immunity.

As the School District's Chief Equity Officer, Jubilee qualifies for the high public official immunity. Regarding the first element of this immunity, Plaintiff alleges that Jubilee was "[a]t all times relevant to [her] complaint," the "Chief Equity Officer for the District [and] [i]n this role[,] she reported to Defendant[] Watlington . . . ." Am. Compl. at ¶ 8. Thus, as Plaintiff alleges, Jubilee's role entails reporting directly to the School District's Superintendent. *Id.* Moreover, the School District also features Jubilee, in this role, as part of the School District's Leadership Team and lists her on the School District's organizational chart of those that report directly to the Superintendent. *See* https://www.philasd.org/leadership/#leadershipteam (last visited February 9, 2026); *see also* https://www.philasd.org/leadership/#orgchart (last visited February 9, 2026).[7] For

---

[7]   For the same reasons articulated in Footnotes 5 and 6, *supra*, the Court may consider this website as a public record without converting this motion into a one for summary judgment. *Beverly*, 182 F.3d at 190 n.3. Here, the School District's description of the School District's Deputy of Talent, Strategy, and Culture is publicly available online. Because Plaintiff's Amended Complaint describes her interactions with Grant-Skinner in his capacity as the School District's Deputy of Talent, Strategy, and Culture, the Court may consider the School District's publicly available website in resolving the motion for Judgment on the Pleadings

14

these reasons, Jubilee, as the School District's Chief Equity Officer, qualifies as a high public official.

As for the second element of the high public official immunity, Plaintiff's only allegations against Jubilee relate to Jubilee's involvement in the School District's review of and alleged censorship of Plaintiff's presentation on the African Diaspora International Solidarity and Jubilee's purported subsequent post in the JFA social media group indicating that references to Palestine were removed from Plaintiff's presentation. *Id*. at ¶¶ 60-64. Assuming the veracity of Plaintiff's allegations, Jubilee performed these actions and made this statement within her role and authority as the School District's Chief Equity Officer. Therefore, Jubilee is entitled to the high public official immunity, and the IIED claim against her should be dismissed.

### f.   Chapman, as the School District's Chief Deputy of Employee Labor Relations, Is Entitled to Immunity.

As the School District's Chief Deputy of Employee Labor Relations, Chapman qualifies for the high public official immunity. Regarding the first element of this immunity, Plaintiff alleges that Chapman was "[a]t all times relevant to [her] complaint," the "Chief Deputy of Employee Labor Relations [and] [i]n this role[,] she reported to Defendant[] Watlington. . . ." Am. Compl. at ¶ 9. In Defendants' Answer, filed on February 10, 2026, while Defendants denied that Chapman reported directly to Watlington, Defendants state that Chapman reported directly to others, including Grant-Skinner. Defendants' Answer at ¶ 9. Thus, Jubilee's role entails reporting directly to another high public official within the School District, whether it be the Superintendent or its Deputy of Talent, Strategy, and Culture. Accordingly, Chapman, as the School District's Chief Deputy of Employee Labor Relations, qualifies as a high public official.

As for the second element of the high public official immunity, Plaintiff's only allegation against Chapman is that Chapman allegedly stated that Plaintiff's counsel could not represent

15

Plaintiff at the School District's investigatory hearings concerning Plaintiff's conduct and Gun post. *Id.* at ¶¶ 111-114. As an initial note, the School District denies that such a statement occurred. Even so, assuming the facts in the light most favorable to Plaintiff, Chapman made this statement within her role as the School District's Deputy of Employee Labor Relations. Even if such a statement was incorrect or imperfect, such conduct was still performed while within Chapman's official role and duties. *Feldman*, 107 A.3d at 824 (granting absolute high-public-official immunity to coroner in case alleging willful misconduct); *Holt*, 694 A.2d at 1140 (holding that high public officials have "absolute immunity even when willful misconduct is alleged"). Therefore, Chapman is entitled to the high public official immunity, and the IIED claim against her should be dismissed.

**B. <u>Plaintiff's IIED Claim Against Watlington, Rauch, Gordon, Grant-Skinner, Jubilee, Chapman, and Crowder Fails as a Matter of Law Because Plaintiff Has Not Alleged that Defendants' Actions Were Extreme or Outrageous.</u>**

Plaintiff's IIED claim, as pled against Defendants Watlington, Rauch, Gordon, Grant-Skinner, Jubilee, Chapman, and Crowder does not, as a matter of law, rise to the level of extreme or outrageous necessary to sustain such a claim. To establish an IIED claim, a plaintiff must prove the following elements: (1) the conduct was extreme and outrageous, (2) the conduct was intentional or reckless, (3) the conduct caused emotional distress, and (4) the emotional distress was severe. *Smith*, 112 F. Supp. 2d at 428.[8] The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

---

[8]    To be clear, Defendants dispute that Plaintiff can establish any element of her IIED claim. However, for purposes of the present Motion, Defendants are focused on the first element.

16

The Restatement of Torts explains that it is not enough that defendants acted "with an intent which is tortious or even criminal, or that [they] intended to inflict emotional distress, or even that [their] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965). As such, liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Significantly, "racial discrimination alone does not satisfy the 'extreme and outrageous conduct' standard. . . ." *Brown v. Amer. Airlines, Inc.*, 723 F. Supp. 3d 411, 423-24 (E.D. Pa. 2024) (dismissing IIED claim, despite the alleged discriminatory motive, because removing plaintiffs from their flight and rebooking them the next day without offering overnight accommodation was not sufficiently outrageous or extreme) (collecting cases); *see also Jeanjacques v. AMC Ent. Holdings, Inc.*, No. 21-3670, 2021 WL 4478665 (E.D. Pa. Sept. 30, 2021) (dismissing IIED claim because the "upsetting, discriminatory conduct lacks the 'threats of violence' required to make it 'desperate and ultra-extreme' as required by the Pennsylvania Supreme Court") (citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). It is also extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to sustain an IIED claim. *N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 737-38 (3d Cir. 2012) (citing *Cox*, 861 F.2d at 395)*; Hoy*, 720 A.2d at 753.

Numerous decisions within this court have repeatedly granted Federal Rule of Civil Procedure 12 motions and dismissed IIED claims where the conduct complained of was not sufficiently extreme and outrageous. For example, in *Geraghty v. East Bradford Twp.*, the court granted defendants' motion to dismiss where the conduct alleged "was objectionable and distasteful, but it was not extreme or outrageous enough to sustain a claim for intentional infliction of emotional distress." 584 F. Supp. 3d 10, 21 (E.D. Pa. 2022). There, the plaintiff alleged that

17

his former supervisor pressured him to lie at a deposition, pitted him against his girlfriend, made after-hours threatening phone calls to him, constantly badgered him, and intentionally retaliated against him. *Id.* The plaintiff experienced so much stress that he quit his job. *Id.* at 16. In dismissing the IIED claim, the court, explained that "extreme and outrageous conduct is found in only very egregious cases, such as concealing a child's death or withholding the body from the parents, mishandling a corpse, or recklessly diagnosing a fatal disease." *Id.* at 20 (internal citations omitted). The court held the "bald, conclusory statements" made in the complaint fell short of alleging sufficient facts to establish the supervisor's conduct was extreme or outrageous. *Id.* at 21.

Likewise, in *Fugarino v. Univ. Services*, the court granted defendants' Federal Rule of Civil Procedure 12 motion to dismiss plaintiff's IIED claim. 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). There, the plaintiff alleged her supervisor (1) criticized her; (2) publicly reprimanded her; (3) disparaged her professionally and personally to others; (4) searched her desk at work; (5) asked her out on a date twice; and (6) made a single "obscene" phone call to her at work. *Id*. at 844. Even so, the court granted defendants' motion to dismiss the IIED claim because this behavior, although "boorish and improper," did not rise to the level of outrageousness necessary to state an IIED claim. *Id.* at 844-45.

Significantly, the court in *Smith* granted defendants' Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, dismissing plaintiff's IIED claim. *Smith*, 112 F. Supp. 2d at 428. In *Smith*, the parent plaintiff claimed the school district defendants leaked his letter—which expressed his view that "white/Jewish teachers" were racist and discriminated against African American students—to the press, the school district, and Jewish groups. *Id.* at 420, 428. After the letter was leaked, plaintiff alleged the assistant principal and a teacher began to pressure the school district and superintendent to remove plaintiff from the advisory panel, and plaintiff

18

was removed. *Id.* at 423. Plaintiff also alleged the board of education and the board's president reacted to pressure and conspired to remove plaintiff from his post as president of the Home and School Association. *Id.* at 423-24. Despite these facts, the court dismissed the IIED claim, noting that "[e]ven if true, such conduct could never rise to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress as a matter of law." *Id.* at 428.

Turning to the present case, while not entirely clear from Plaintiff's allegations as to which of the Individual Defendants' conduct she alleges to be outrageous and/or extreme, to the extent Defendants can identify such alleged conduct below, none rises to the requisite level of extreme or outrageous to sustain her IIED claim. Plaintiff broadly alleges the Individual Defendants retaliated against her, harassed her, and suppressed her speech. *See generally* Am. Compl.; *id.* at ¶ 149. Plaintiff also attempts to hold the Individual Defendants liable for the actions of a third-party organization, the JFA. *Id.* at ¶ 149. Respectfully, this Court should hold, as a matter of law, that Plaintiff's allegations about the Individual Defendants' conduct, as recounted below, are neither outrageous nor extreme, and the IIED claims should be dismissed.

Plaintiff's allegations against the Individual Defendants amount to no more than mere "annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, cmt. d. Plaintiff complains that her presentation for a school-sponsored lecture series was reviewed and censored by Jubilee, Rauch, and Grant-Skinner. *Id.* at ¶¶ 61, 63. Yet, an obvious and important function of school officials is ensuring that government and school-sponsored speech is appropriate for the intended audience. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (U.S. 2022) (confirming that when a public employee speaks pursuant to his or her official duties, "the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's

19

own speech") (internal citations omitted)); *see Hazelwood Sch. Dist. v. Kuhlmeier*, 108 S. Ct. 562, 570 (U.S. 1988) (explaining that "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics").  Thus, even if Jubilee, Rauch, and Grant-Skinner reviewed and edited Plaintiff's presentation for a school event, this does not rise to the level of extreme or outrageous necessary to support an IIED claim.

Additionally, conclusory allegations cannot save Plaintiff's IIED claim on this element. Plaintiff baldly asserts that the Individual Defendants acted on behalf of the JFA.  Am. Compl. at ¶ 149.  Apart from alleging that Jubilee made a post in the JFA social media group, *id.* at ¶ 64, which does not establish that Jubilee was acting on behalf of the JFA, Plaintiff fails to allege any fact to support this conclusory allegation as being extreme or outrageous.  Plaintiff also complains about how the Individual Defendants handled the investigation into Plaintiff's and another teacher's conduct.  *Id.* at ¶¶ 67, 69.  Specifically, Plaintiff contends that the Gun Post was a pretextual reason for Defendants placing her on paid leave, and, in doing so, the Individual Defendants retaliated against her, despite the severity of Plaintiff's perceived gun threats.  *Id.* at ¶¶ 21-23, 80.  Plaintiff also claims that Grant-Skinner opened an investigation into Plaintiff's conduct based upon Plaintiff's pro-Palestine social media posts, yet Plaintiff admits that she was aware that the School District received approximately 1,500 emails accusing her of antisemitism. *Id.* at ¶¶ 58, 67.  Finally, Plaintiff states that she was dissatisfied with how the Individual Defendants handled the investigation into a third-party teacher.  *Id.* at ¶ 69.  All said, "[t]hese conclusory statements fall short of alleging sufficient facts to suggest a claim" that the Individual Defendants' conduct was extreme or outrageous.  *Geraghty*, 584 F. Supp. 3d at 21.

20

As detailed above, the courts in *Geraghty*, *Fugarino*, and *Smith* each determined that the conduct alleged in those respective cases was insufficient to meet this standard for an IIED claim. Even construing the facts alleged in the present case in the light most favorable to Plaintiff, her IIED allegations are not only far less offensive than the conduct alleged in the aforementioned three cases but also fail to constitute the extreme or outrageous level needed to sustain such a claim. Even if Plaintiff finds Defendants' conduct objectionable, unfortunately, this is not enough to save her IIED claim. As exhibited by the cases described herein, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary" to recover for IIED. *N'Jai*, 487 F. App'x at 737-38. This case is no exception to that rule. For these reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiff's IIED claim against Defendants Watlington, Rauch, Gordon, Grant-Skinner, Jubilee, Chapman, and Crowder.

## V.    CONCLUSION

As outlined above, Plaintiff's remaining IIED and Whistleblower claims against Defendants Watlington, Gordon, Rauch, Grant-Skinner, Chapman, and Jubilee are barred by the high public official immunity. Moreover, Plaintiff's IIED claim against Watlington, Gordon, Rauch, Grant-Skinner, Chapman, Jubilee, and Crowder fails as a matter of law because Plaintiff fails to allege any conduct by the Individual Defendants that was extreme or outrageous. For these reasons, the Court should grant this Motion and dismiss with prejudice the remaining state law claims against these Individual Defendnats.

21

#125526329v1

Date:  March 30, 2026

*/s/ Marjorie McMahon Obod*
Marjorie McMahon Obod
Margaret Spitzer Persico
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103
(215) 575-7000

*Attorneys for Defendants, School District of Philadelphia, Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, Nadia McCrimon, Oz Hill, and Omar Crowder*

22

#125526329v1

## CERTIFICATE OF SERVICE

I, Marjorie McMahon Obod, hereby certify that on the date set forth below, I caused the foregoing Motion and accompanying Memorandum of Law to be filed electronically and made available for viewing and downloading from the Court's ECF system. A copy of the foregoing Motion is, thus, served on all parties via the Court's ECF system.

Date: March 30, 2026

/s/ Marjorie McMahon Obod
Marjorie McMahon Obod
Margaret Spitzer Persico
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103
(215) 575-7000

*Attorneys for Defendants, School District of Philadelphia, Tony B. Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant Skinner, Subriya Jubilee, Michelle Chapman, Nadia McCrimon, Oz Hill, and Omar Crowder*

23

#125526329v1