IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Keziah Ridgeway<br><br>    Plaintiff,<br><br>The School District of Philadelphia,<br><br>  *et al.* | No. 5:24cv-02404 |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Keziah Ridgeway, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendants' Motion for Judgment on the Pleadings. Accepting the well-pled allegations of the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Defendants' Motion should be denied.

**I. INTRODUCTION**

Defendants seek dismissal of surviving claims by recasting disputed factual allegations as settled truths and by expanding Pennsylvania's high public official immunity doctrine beyond its narrow limits. The motion fails for three principal reasons.

First, Defendants have not established Defendants Omar Crowder, Jeremy Grant Skinner Nadia McCrimon, Michelle Chapman and Subriya Jubilee qualify for immunity merely by virtue

of their titles. Under Pennsylvania law, titles alone do not control.[1] Rather, courts examine the nature of the office, policymaking authority, and whether the challenged conduct was undertaken in furtherance of official duties. The Pennsylvania Commonwealth Court has established immunity turns on an employees' functions, not labels.[2] *Kipp* supports the position that the immunity doctrine is not automatic for all school administrators or personnel.

Second, even assuming arguendo any of the Defendants occupied qualifying positions, the Complaint expressly alleges conduct outside legitimate governmental duties: acting through and on behalf of the Jewish Families Alliance ("JFA"), censoring speech, selectively investigating Plaintiff, suppressing complaints of discrimination, and recommending discipline based upon Plaintiff's political and religious viewpoints rather than any neutral employment purpose or policy. Such conduct is personal, ideological, retaliatory, and ultra vires—not protected official conduct.

Third, Defendants' attack on Plaintiff's intentional infliction of emotional distress ("IIED") claim fails because they have not shown the pleadings are insufficient as a matter of law. The Complaint alleges a sustained campaign of harassment, reputational attacks, censorship, retaliatory reassignment, suspension without pay, and discriminatory targeting based upon Plaintiff's identification as a Muslim Black woman publicly supporting Palestinians. It further alleges emotional and other trauma caused by Defendants' conduct. At the pleadings stage, those allegations are sufficient to survive a motion to dismiss.

## II. LEGAL STANDARD

---

[1] See Kipp v. Bellefonte Area School District, 349 A.3d 239, 10 Commonwealth Ct. 2025.
[2] *Id.*

Judgment on the pleadings under Rule 12(c) is appropriate only where no material issue of fact exists and the movant is entitled to judgment as a matter of law.[3] The Court must accept "all allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party."[4] Defendants cannot prevail by disputing Plaintiff's factual allegations or offering competing characterizations of their conduct. The standard of review for judgment on the pleadings is "under the same standards as a motion to dismiss pursuant to Rule 12(b)(6).[5]

## III. ARGUMENT

*Defendants Have Not Adequately Established Jubilee, Grant-Skinner,*
*or Chapman Qualify as High Public Officials.*

Defendants rely heavily on official titles to establish defendants as High Public Officials. That is insufficient. Pennsylvania's high public official immunity doctrine is narrowly construed and depends on the nature of the office, the degree of policymaking discretion, and whether the official's role implicates the public interest such that immunity is necessary for fearless decision-making. The doctrine does not extend automatically to every supervisory employee, administrator, principal, or labor relations official.

In *Kipp v. Bellefonte Area School District,* the court examined the employees specific duties and authority rather than merely accepting a title at face value. There, the court carefully analyzed whether particular defendants' roles justified immunity and whether challenged acts were undertaken within the scope of authority.[6]

---

[3] *See,* Wolfington v. Reconstructive Orthopaedic Associates II PC, 935 F.3d 187, 194 (3d Cir.)
[4] *See,* Bibbs v. Trans Union, LLC, No. 21-1350 slip op. at 8 (3d Cir. Aug. 8, 2022).
[5] *See,* Allstate Property and Casualty Insurance Co. v. Squires, 667 F.3d 388, 390 (3d Cir. 2012).
[6] *See,* Kipp, 349 A.3d at 15.

Defendants bear the burden of establishing entitlement to the extraordinary protection of high public official immunity. Yet, as to Defendants Subriya Jubilee, Jeremy Grant-Skinner, Omar Crowder, and Michelle Chapman, the Motion offers little more than job titles, organizational hierarchy, and generalized assertions to establish High Official Immunity. That is insufficient as a matter of law.

Pennsylvania courts repeatedly hold whether individuals qualify as a "high public official" must be determined on a case-by-case basis, considering the nature of the office, the importance of the position, the actual duties exercised, and whether the role carries genuine policy-making authority or sovereign discretion. Merely occupying a supervisory or managerial role does not automatically confer immunity. Defendants' Motion fails to satisfy that standard.

**A. Subriya Jubilee**

As to Defendant Jubilee, Defendants rely almost exclusively on the assertion she served as "Chief Equity Officer," reported to the Superintendent, and appeared on an organizational chart. Those allegations do not establish Jubilee exercised the kind of independent governmental authority historically required for high public official immunity.

The Motion does not identify any statute, regulation, delegated sovereign authority, or final policymaking power vested in Jubilee.[7] Nor does it establish she possessed authority comparable to elected officials, superintendents, solicitors, or other positions traditionally recognized under the doctrine. Placement on a leadership chart and a direct reporting relationship are administrative facts, not proof of immunity.

---

[7] The Motion for Judgment on the pleadings state, Jubilee reports directly to the Superintendent as the basis of being a High Public Official. Pg. 14.

Moreover, the conduct alleged against Jubilee includes editing Plaintiff's presentation to remove references to Palestine and communicating with JFA regarding said censorship on their behalf. Such allegations suggest ideological intervention and favoritism toward a private advocacy group, for which no chart or scope of duties would be applicable to her purported scope of duties.

**B. Grant-Skinner**

Defendants similarly fail to establish Grant-Skinner qualifies for immunity merely because he held the title "Deputy of Talent, Strategy, and Culture." The Motion cites website descriptions of recruiting, onboarding, evaluation systems, and internal management functions. But internal administrative oversight and personnel management do not automatically transform a district employee into a high public official. It is important to note, there are no facts or assertions Grant-Skinner carried any of the final authority/powers typically associated with High Public Officials.

The Motion does not demonstrate Grant-Skinner had final authority to enact binding policy, exercise sovereign discretion, or make public decisions insulated from review. At most, Defendants describe a senior administrator involved in human resources and organizational operations. Pennsylvania law does not extend absolute immunity to every executive employee with management responsibilities.

Further, the Complaint alleges Grant-Skinner participated in investigations targeting Plaintiff because of protected pro-Palestinian speech and failed to address discrimination complaints. Those allegations concern retaliatory misuse of administrative functions, not actions inherently tied to a public office.

**C. Chapman**

As to Chapman, Defendants again rely on title alone: "Chief Deputy of Employee Labor Relations." The Motion asserts Chapman reported either to the Superintendent or to Grant-Skinner. Yet reporting lines do not create immunity. The Motion identifies no independent statutory authority, no final labor-relations policymaking power, and no governmental discretion comparable to offices previously recognized as high public officials. At most, Chapman appears to be an internal labor-relations administrator carrying out employment functions within the District's bureaucracy.

The alleged conduct—restricting Plaintiff's representation during disciplinary proceedings—concerns operational personnel matters, not sovereign acts requiring absolute immunity. Defendants cite no authority extending High Public Official immunity to an employee-labor-relations deputy under these circumstances.

### D. At a Minimum, Discovery Is Required

Whether these individuals exercised genuine policymaking authority, what discretion they possessed, whether they acted independently or at others' direction, and whether their challenged conduct was within any official duty are inherently fact-bound questions. Defendants attempt to resolve those discovery issues solely through self-serving descriptions in a Rule 12(c) motion before discovery.

That is premature. On the present pleadings, Defendants have not adequately established Jubilee, Grant-Skinner, Crowder, or Chapman meet the narrow requirements of High Public Official immunity. Accordingly, dismissal on this basis must be denied.

*The Complaint Alleges Chapman, Jubilee and Grant Skinner*
*Acted Outside Any Legitimate Official Duties.*

Even if any Defendant(s) held a qualifying office, immunity applies only to actions taken in the course of official authority.[8] Plaintiff's Complaint alleges the opposite. The Complaint alleges Defendants were aware of Plaintiff's reports of discrimination, her pro-Palestine political views, and protected speech, yet ignored her complaints and instead targeted her. The Complaint further alleges Defendants—including Crowder, McCrimon, Jubilee, and others—acted "through and on behalf of JFA" recommended Plaintiff's permanent reassignment with prejudice, suspension without pay, and written warnings based upon her protected speech.

Those allegations describe conduct motivated not by public duty, but by private political and religious bias and outside pressure from a private religious advocacy group. The Complaint alleges McCrimon knew of Plaintiff's protected speech and complaints of discrimination, yet participated in the investigation and adverse employment actions taken against Plaintiff. Such retaliatory use of labor-relations machinery to punish protected expression is not conduct shielded by immunity.

Because the Complaint plausibly alleges Defendants acted for ideological purposes and in service of JFA rather than the School District, immunity cannot be resolved in their favor on the pleadings.

**C. Plaintiff Has Adequately Pleaded Intentional Infliction of Emotional Distress.**

Defendants seek dismissal of Plaintiff's IIED claims must also fail. However, to establish IIED claims under Pennsylvania law, a plaintiff must allege extreme and outrageous conduct intentionally or recklessly causing severe emotional distress. Whether conduct is sufficiently

---

[8] *See* Kipp, 349 A.3d 239, *14 (2025).

outrageous is fact dependent and rarely appropriate for resolution where the pleadings describe a sustained campaign of discriminatory retaliation.

Here, Plaintiff alleges:

- two years of written slander, verbal abuse, and harassment based on her public support for Palestinians;

- false accusations tied to JFA complaints;

- censorship of student and professional speech concerning Palestine;

- suppression of Plaintiff's complaints regarding discrimination and assault;

- investigation, reassignment, suspension without pay, and written discipline because of protected speech.

This is not a routine workplace dispute. It is alleged religious, racial, and political targeting by public officials using institutional power to punish protected beliefs and speech. Moreover, Defendants incorrectly assert Plaintiff has not alleged harm. The Complaint seeks compensatory damages for economic and non-economic loss and describes trauma resulting from the retaliatory campaign against her. At the pleadings stage, Plaintiff need not prove damages; she need only plausibly allege them, which she has done.

**D. Defendants Impermissibly Ask the Court to Resolve Disputed Facts.**

Throughout the Motion, Defendants deny events occurred, deny statements were made, or offer benign explanations for their conduct. These are merits defenses for discovery or summary judgment, not Rule 12(c). The Court must accept Plaintiff's allegations as true at this stage. Doing so, Plaintiff plainly states viable claims.

Defendants' Motion improperly seeks dismissal by asking the Court to weigh disputed facts, adopt Defendants' competing characterization of the allegations, and resolve issues that are not appropriate at the Rule 12(c) stage. But the governing standard requires the opposite: the Court

must accept Plaintiff's well-pleaded allegations as true, draw all reasonable inferences in Plaintiff's favor, and deny judgment unless Defendants are entitled to relief as a matter of law. At this juncture, they are not.

Moreover, piecemeal dismissal of individual claims and parties before factual development would be premature and contrary to the preference for resolving claims on a complete record rather than through fragmented pleadings. Discovery is necessary to determine the scope of each Defendant's authority, motive, involvement, communications with third parties, and whether the challenged actions were taken within or outside any legitimate official duties. To rule now would require the Court to decide contested factual issues without the benefit of discovery. Because material factual disputes remain and Plaintiff has plausibly stated actionable claims, Defendants' Motion for Judgment on the Pleadings should be denied in its entirety. Defendants' Motion improperly seeks dismissal by asking the Court to weigh disputed facts, accept Defendants' competing narrative, and resolve factual questions that cannot properly be decided on a Rule 12(c) motion. The governing standard requires the Court to accept Plaintiff's well-pleaded allegations as true, draw all reasonable inferences in Plaintiff's favor, and deny relief unless Defendants are entitled to judgment as a matter of law. They are not.

Further, piecemeal dismissal of claims and parties at this stage would be premature because the factual record has not been developed. Discovery is necessary to determine the full extent of each Defendant's involvement, motives, communications with third parties, scope of authority, and whether the challenged conduct was undertaken for legitimate institutional purposes or for private political and religious reasons.

This is especially true as to Plaintiff's claim for Intentional Infliction of Emotional Distress. IIED claims are inherently fact intensive and often depend upon the cumulative nature, context,

duration, intent, and impact of the conduct at issue. The present record consists only of pleadings. Discovery may reveal additional communications, retaliatory coordination, discriminatory animus, witness testimony, medical evidence, and the full scope of Plaintiff's emotional and physical trauma. Those matters cannot be fairly assessed on an undeveloped record.

Notably, Defendants did not move for summary judgment following discovery, where evidentiary materials could properly be considered. Instead, they seek dispositive relief before Plaintiff has had a fair opportunity to obtain evidence supporting her claims. Plaintiff is entitled to pursue discovery before the Court evaluates whether the evidence supports dismissal of the IIED claim or any other.

To rule now would require the Court to resolve contested factual issues and truncate Plaintiff's right to develop the evidentiary record. Because material factual disputes remain and Plaintiff has plausibly stated viable claims, Defendants' Motion for Judgment on the Pleadings must be denied in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings in its entirety, particularly as to Defendants Crowder, McCrimon, Grant-Skinner, Chapman and Jubilee, and permit this matter to proceed to discovery.

By: */s/ Spencer Hill*, Esq.
Spencer A. Hill, Jr. Esq., No. 324787
Spencer@spencerhilllaw.com
215-313-7026
Attorneys for Plaintiff
The Law Office of Spencer Hill, PLLC
Philadelphia, PA 19121

By: */s/Mu'min F. Islam, Esq*
Mu'min F. Islam, Esq., No. 208979
muk@myacelaw.com
404-665-3144
Attorneys for Plaintiff
7000 Central Parkway, Ste. 1100
Atlanta, GA 30328

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Keziah Ridgeway

      Plaintiff,

v.

                                **No. 5:24cv-02404**

The School District of Philadelphia,
  *et al.*

      Defendant.

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a true and accurate copy of

**"PLAINTIFFS MOTION IN OPPOSITION OF DEFENDANTS MOTION FOR JUDGEMENT ON THE PLEADINGS"**

upon all parties to this matter via efiling to all parties of record.

This 27th day of April, 2026

By: */s/ Spencer Hill*, Esq.
Spencer A. Hill, Jr. Esq., No. 324787
Spencer@spencerhilllaw.com
215-313-7026
Attorneys for Plaintiff
The Law Office of Spencer Hill, PLLC
Philadelphia, PA 19121

By: */s/Mu'min F. Islam, Esq*
Mu'min F. Islam, Esq., No. 208979
muk@myacelaw.com
404-665-3144
Attorneys for Plaintiff
7000 Central Parkway, Ste. 1100
Atlanta, GA 30328