IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEZIAH RIDGEWAY,<br>　　　　　　　**Plaintiff,**<br><br>　　　　　v.<br><br>**THE SCHOOL DISTRICT OF**<br>**PHILADELPHIA,** *et al.*<br>　　　　　　　**Defendants.** | CIVIL ACTION<br><br><br><br><br>NO.  25CV2440 |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Keziah Ridgeway ("Ridgeway"), brought suit against the Philadelphia School

District ("the District") and nine individuals: Tony Watlington, Lynn Rauch, Richard Gordon,

Jeremy Grant-Skinner, Subriya Jubilee, Michelle Chapman, Nadia McCrimon, Oz Hill, and

Omar Crowder ("the individually named Defendants").  Following the Defendants' Motion to

Dismiss, only a subset of her claims remain: (1) claims for First Amendment Retaliation brought

under 42 U.S.C. § 1983 against Jeremy Grant-Skinner, Richard Gordon, and Omar Crowder; (2)

a claim for violation of Fourteenth Amendment Equal Protection, *see* 42 U.S.C. § 1983, against

Michelle Chapman; (3) common law claims for intentional infliction of emotional distress

against Tony Watlington, Lynn Rauch, Richard Gordon, Jeremy Grant-Skinner, Subriya Jubilee,

Michelle Chapman, and Omar Crowder; and (4) claims for violations of the Pennsylvania

Whistleblower Law, 43 Pa. C.S.A. §§ 1421-28, against Jeremy Grant-Skinner, Richard Gordon,

Omar Crowder, and the District.  Defendants have now filed, pursuant to Federal Rule of Civil

Procedure 12(c), a Motion for Judgment on the Pleadings, arguing that six of the remaining

seven individually named Defendants are entitled to high public official immunity for the state

law claims, and that Ridgeway's claims for intentional infliction of emotional distress fail as a

matter of law.  For the reasons that follow, the Motion will be granted in part and denied in part.

1

## I.    FACTS

The recitation of the facts underlying Ridgeway's suit against the District and the individually named Defendants has already been laid out in detail and shall not be repeated in full here, *see Ridgeway v. Sch. Dist. of Phila.*, 2026 WL 94617 at *1-3 (E.D. Pa. Jan. 13, 2026). Relevant to the present motion, however, are the actions she directly attributes to the seven remaining individually named Defendants, which she alleges as the basis for her Whistleblower Law and intentional infliction of emotional distress claims.

- Tony Watlington, Sr. ("Watlington") is the "Superintendent of Schools/Chief Executive Officer for the District."  Following the District's investigation into whether Ridgeway's August 2024 social media post ("August Post")—"ain't no fun when the rabbit got the gun . . . part two is about to drop"—was a threat of gun violence, Watlington directed that the results of that investigation be withheld until an investigation into the conduct of another teacher was also complete.

- Lynn Rauch ("Rauch") is General Counsel for the District. After Ridgeway was invited by a colleague to present as part of a lecture series hosted by the Social Studies Department in Spring 2024—and in response to complaints from community members—Rauch required Ridgeway to submit her presentation slides for inspection.  Rauch then edited the slides to remove any mention of Palestine and had Ridgeway's presentation monitored to ensure compliance.

- Subriya Jubilee ("Jubilee") is the District's Chief Equity Officer.  Along with Rauch, she required Ridgeway to submit her presentation slides and edited them to remove mention of Palestine. She then posted an update in the Jewish Families Alliance social media page to inform them that their complaints against Ridgeway were being investigated.

- Jeremy Grant-Skinner ("Grant-Skinner"), is the District's Deputy of Talent, Strategy, and Culture. He too, with Rauch and Jubilee, required Ridgeway to submit her presentation slides for inspection and edits.  In a separate incident that spring, shortly after Ridgeway reported the misconduct of another teacher, Grant-Skinner had placed Ridgeway under investigation for her pro-Palestine social media posts and alleged antisemitism. Ridgeway alleges that the investigation was in response to her reports of wrongdoing.

- Michelle Chapman ("Chapman"), the Chief Deputy of Employee Labor Relations, refused Ridgeway's request to be represented by private counsel during the disciplinary investigations and hearings.  Ridgeway alleges that this was racial and religious

discrimination, because another school district employee facing a similar investigation, but not belonging to the same protected classes, was allowed private counsel.

- Richard Gordon ("Gordon") is Assistant Superintendent for the District. Following the School District's decision to censor a student project focused on Palestine, Ridgeway confronted him at a public meeting where he "admitted that the District should not have censored [the project]." He later placed Ridgeway on paid administrative leave pending the investigation into her August 2024 social media post.

- Omar Crowder ("Crowder"), the Principal of North East High School, was one of the two individuals who oversaw Ridgeway's work on a day-to-day basis. Ridgeway reported to him directly. He, along with Gordon, removed Ridgeway from the classroom and placed her on remote work or paid administrative pending the investigation into her August 2024 Post.

## II.    LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). When deciding a motion for judgment on the pleadings, a court considers the pleadings and exhibits attached thereto, "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents," and matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 595 (E.D. Pa. 2010). Further, the allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 221 (citation omitted).

## III.    DISCUSSION

Here, the individually named Defendants seek judgment in their favor for some—but not all—of the outstanding claims. They argue that six of the seven remaining individually named

Defendants[1]—Watlington, Chapman, Rauch, Jubilee, Grant-Skinner, and Gordon—are high public officials and are entitled to complete immunity from the state law claims. They further argue that none of the behavior alleged in Ridgeway's Amended Complaint is "extreme and outrageous" as a matter of law and is therefore insufficient to sustain her claims for intentional infliction of emotional distress.

### A. High Public Official Immunity

Under Pennsylvania common law, high public official immunity is a "long-standing category of . . . immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017). Although this doctrine originally applied to shield high public officials from claims arising from defamatory statements made in the course of their official duties, *Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952), the Pennsylvania Supreme Court later made it clear that this immunity was not limited to suits for defamation, *see Jonnet v. Bodick,* 244 A.2d 751, 753 (Pa. 1968). The doctrine has since been applied to grant immunity from claims for economic interference, *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560 (Pa. Commw. 2005), intentional infliction of emotional distress, *Feldman v. Hoffman*, 197 A.3d 821 (Pa. Commw. 2014), wrongful discharge*, Barone v. Gordon*, 2024 WL 3275959 (E.D. Pa. July 2, 2024), the Pennsylvania Uniform Firearms Act, *Doe*, 174 A.3d at 604-06, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act, *Winig v. Off. of Dist. Att'y*, 347 A.3d 2 (Pa. 2025), among others.[2] This immunity is sweeping,

---

[1] Defendants do not assert high public official immunity for Crowder.

[2] Courts in Pennsylvania have applied high public official immunity in the context of intentional infliction of emotional distress, but Defendants assume, without providing any authority or argument, that this immunity also extends to claims brought under the Pennsylvania Whistleblower Law. Although the Court has not identified any cases applying high public official immunity in the Whistleblower context, this question need not be decided at this time. The Whistleblower Law claims persist against only three individually named Defendants: Grant-Skinner,

because "absolute immunity from civil liability for high public officials is the only legitimate means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Doe*, 174 A.3d at 603 (citation and internal quotation marks omitted). This is not for the personal benefit of the high public official, but rather "for the benefit of the *public* he or she serves." *Id.* (emphasis in original).

While this privilege is broad, it is not without limits. "[G]iven the great potential for harm, the privilege must be limited to those statements and actions which are in fact 'closely related' to the performance of those official duties." *Osiris Enters.*, 877 A.2d at 566-67 (quoting *McCormick v. Specter*, 275 A.2d 688, 689 (Pa. Super. 1971)). Accordingly, the determination that the privilege applies requires two findings: (1) the defendant is a high public official; and, (2) the challenged conduct occurred in the course of the defendant's official duties. *Id.* at 567.

There is no brightline or categorical approach to determining whether a specific individual is a high public official. *Montgomery v. City of Philadelphia,* 140 A.2d 100, 105 (Pa. 1958). Instead, each invocation of the immunity from suit must be evaluated on a case-by-case basis. *Id.* In making that determination, courts must consider "the nature of [the official's] duties, the importance of his office, and particularly whether or not he has policy-making functions." *Id.* Even absent a policymaking function, courts have also extended high public official immunity when the office requires the exercise of substantial discretion—such as with assistant district attorneys—because it is in "the public interest in seeing that the official not be impeded in the performance of important duties." *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001).

---

Gordon, and Crowder. The Defendants did not assert this defense on behalf of Crowder and, as is discussed further below, they did not establish that Grant-Skinner and Gordon are high public officials entitled to absolute immunity.

The second inquiry, whether the high public official acted within the scope of his or her authority, depends on whether the challenged conduct was "closely related" to the performance of official duties. *Osiris Enters*, 877 A.2d at 567 ("Because the candid discussion and determination of the 'non-responsibility' of bidding contractors is clearly part of the performance of a Borough Council member's official duties, Defendants' actions fall within the scope"). *Compare Hall v. Kiger*, 795 A.2d 497 (Pa. Commw. 2002) (en banc) (borough councilman acted in the scope of his authority when he made allegedly defamatory statements in the context of a public meeting while performing his duty as councilman) *with Vello v. DeMarco*, 342 A.3d 789 (Pa. Commw. 2025) (township commissioner speaking in a different forum on a matter over which he had no control was acting outside the scope of his authority).

High public official immunity is an affirmative defense, and so the burden rests with the defendant to establish: (1) that he or she is a high public official; and, (2) that the challenged conduct occurred in the course of official duties and within the scope of his or her authority. *See Feldman*, 107 A.3d at 829-34 (assuming without deciding that high public official immunity is an affirmative defense); *Winig v. Office of Dist. Att'y of Phila.*, 347 A.3d 2 (Pa. 2025) (same); *cf. Justice v. Lombardo*, 208 A.3d 1057, 1071-72 (Pa. 2019) ("[B]ecause sovereign immunity is an affirmative defense . . . the defendant carries the burden at trial of proving that his conduct was within the scope of his employment."). Immunity can be decided without permitting discovery when "the defense is apparent from the face of the Complaint." *Feldman*, 107 A.3d at 830-32; *see also Durham*, 772 A.2d at 70 (affirming pre-discovery determination that assistant district attorney was entitled to high public official immunity).

### i.  Watlington

Defendants assert high public official immunity on behalf of Watlington, the District's superintendent, and Ridgway does not challenge this.  Many courts have found that school

6

superintendents are high public officials, *see e.g.*, *Linder v. Mollan*, 677 A.2d 1194, 1197 (Pa. 1996) (citing *Petula v. Mellody*, 631 A.2d 762 (Pa. Commw. 1993)) (explaining that the Commonwealth Court in *Petula* "granted . . . three school superintendents immunity as high public officials"); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp.2d 417 (E.D. Pa. 2000) ("school superintendents . . . qualify as high public officials"), and with good reason.  Superintendents are charged with a host of responsibilities, including executing Board actions, administering and operating the public school system, and supervising all matters pertaining to instruction in District schools.  *See e.g.*, Phila. Home Rule Charter § 12-400.  Those duties are not merely ministerial but require the exercise of broad discretion over the management of a large public school system—and Philadelphia is the largest School District in the state,—the implementation of Board policy, the supervision of senior administrators and instructional affairs, and the public communication of District decisions.  The decision to delay the results of Ridgeway's August Post investigation falls squarely into his ambit and within his administrative and operational authority.

### ii. Rauch

Next, Defendants argue that Rauch, the General Counsel, is a high public official and again Ridgway makes no answer to this assertion.  As the District's chief legal officer, Rauch is responsible for advising the Board of Education, the Superintendent, and senior District leadership on matters of legal compliance, litigation risk, statutory and constitutional obligations, employment and student-related disputes, and the lawful implementation of District policy and she oversees at least 46 attorneys and staff members across six different legal subdepartments. This position places Rauch at the center of institutional decision-making concerning the District's legal obligations and response to matters of public importance.  Because the office entails significant discretionary authority closely tied to the formulation, implementation, and

defense of District policy, the General Counsel falls within the narrow class of officials whose duties are sufficiently important to warrant high public official immunity. *See also Durham*, 772 A.2d at 70 (assistant district attorneys were high public officials); *Mosley v. Observer Publ'g Co.*, 619 A.2d 343 (Pa. Super. 1993) (county attorney); *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp.3d 554 (W.D. Pa. 2019) (school district solicitor).

With respect to the second prong, whether she undertook the actions in the course of her official duties and within the scope of her authority, the only actions Ridgeway alleged as to Rauch involve Rauch's oversight of Ridgeway's Spring 2024 presentation. The General Counsel's monitoring, reviewing, and editing of that presentation implicated the District's legal, instructional, and institutional interests, and therefore the conduct was closely related to Rauch's role as the District's chief legal officer.

### iii. Gordon

Defendants next argue that high public official immunity shields Gordon, the Assistant Superintendent, from suit. But their argument rests solely on a footnote in an unpublished, nonbinding federal district court decision that did not decide the issue. *See Cole v. Cent. Greene Sch. Dist.*, 2019 WL 7283130, at *14 n.8 (W.D. Pa. Dec. 27, 2019). Defendants suggest that since that court said—without providing any reasoning—that it was "clear" that the assistant superintendent in that case was a high public official, immunity should be granted here. But this is exactly the sort of categorical approach that was disallowed by the Pennsylvania Supreme Court. Instead, courts must consider the application of high public official immunity on a case-by-case basis. *Linder*, 677 A.2d at 1198 (quoting *Montgomery*, 140 A.2d at 105) ("absent statutory classification, the parameters establishing 'high public official' status would be delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line 'of demarcation, if any there be, which separates offices which are protected by absolute privilege

8

from those which are not.'").  Having provided only Gordon's title and no specific information about his duties as assistant superintendent, it is impossible to determine whether he is a high public official or whether his interactions with Ridgeway were closely related to these duties.

### iv. Grant-Skinner

Similarly, Defendants argue that Grant-Skinner, the Deputy Superintendent of Talent, Strategy, and Culture, is a high public official because he is responsible for recruitment, onboarding, training, and professional development strategy for the District.  Defendants contend that these functions are "pivotal" and "important to the public interest"—important enough that he should be granted absolute immunity to ensure that they are not impeded.  However, this is insufficient to justify absolute immunity.  Grant-Skinner's duties concern the administration and implementation of personnel practices within the District, and, while not insignificant, are not of the same public importance as those exercised by officials such as a mayor, councilmember, sheriff, or even a superintendent.

Nor does the nonprecedential Commonwealth Court decision in *Kipp v. Bellefonte Area Sch. Dist.*, 2025 WL 2837404 (Pa. Commw. Oct. 7, 2025) alter that conclusion.  In *Kipp*, the court granted high public official immunity to a school HR official.  However, its analysis hinged on the official's particular responsibility for "addressing, investigating, and determining the viability of harassment complaints"—functions the court viewed as analogous to the discretionary judgment exercised by an assistant district attorney.  *Id.* at *16-17.  Defendants make no comparable showing here.  They do not contend that Grant-Skinner had an investigative role, much less that his responsibilities involved anything akin to prosecutorial discretion. "[T]he public interest does not demand that all public officials be entitled to absolute privilege, but only that 'high-ranking officers' be so protected," *Linder*, 677 A.2d at 1197-98 (quoting

9

*Montgomery*, 140 A.2d at 104), and Defendants have not shown that Grant-Skinner falls within this narrow class.

### v. Jubilee and Chapman

Defendants' final arguments on this issue appear to rest on the premise that Jubilee and Chapman—the Chief Equity Officer and Chief Deputy of Labor Relations, respectively—qualify as high public officials merely because they report to individuals who may themselves hold that status.  With respect to Jubilee, Defendants also cite the School District's organizational chart, which lists her as a member of the "Leadership Team."  But, with no information beyond their mere titles and general reporting structure, it is impossible to weigh "the nature of [their] duties, the importance of [the] office, and particularly whether or not [they have] policy-making functions."  *Montgomery*, 140 A.2d at 105.  Absent this information, Defendants have simply not done enough to establish that Jubilee or Chapman are entitled to high public official immunity.

### B.  Intentional Infliction of Emotional Distress

Turning next to the challenge to Ridgeway's claims for intentional infliction of emotional distress, Defendants argue that the conduct alleged in Ridgeway's Amended Complaint falls short of the "extreme and outrageous" standard that is necessary to support such claims.

Under Pennsylvania law, intentional infliction of emotional distress requires "'intentional outrageous or extreme conduct by the defendant, which causes [the plaintiff] severe emotional distress' and 'some type of resulting physical harm due to the defendant's conduct.'"  *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)).  For conduct to rise to this level, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa.

1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

Here, Ridgeway argues that the individually named Defendants, collectively,[3] engaged in conduct that is sufficiently "extreme and outrageous" to support her claims. She alleges that they censored her speech and opened investigations into her conduct following complaints from the Jewish Families Alliance[4] and other community members. She claims that they discriminated against her based on her religion and race by denying her private representation, placed her on administrative leave or remote work while the investigations were pending, and unjustifiably withheld the results of said investigations. Ridgeway argues that this was "a sustained campaign of discriminatory retaliation" and is therefore sufficient. She further asserts—although she provides no citations and no supporting authority—that such a case is "rarely appropriate for resolution where the pleadings describe a sustained campaign of discriminatory retaliation."

To the contrary, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery," *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988), since liability attaches only "for only the most clearly desperate and ultra extreme conduct," *Hoy*, 720 A.2d at 754. "[L]iability . . . does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

---

[3] Ridgeway assumes, while providing no authority, that each of the individually named defendants can be held vicariously liable for the conduct of all of the others, as well as the conduct of the District writ large. However, since the conduct, even when considered as a whole, does not rise to the level of extreme and outrageous, it is not necessary to tease apart the conduct of each of the remaining individually named Defendants.

[4] Ridgeway also attempts to hold the individually named defendants responsible for the threats, verbal abuse, and harassment that she claims she suffered at the hands of the Jewish Families Alliance. As explained in the previous Memorandum Opinion in this matter, it "does not follow that some District employees' membership in a broader community organization necessarily allows the attribution of the entirety of that organization's actions to the District." *Ridgeway*, 2026 WL 94617 at *6. It is likewise inappropriate to attribute all of the actions of this organization to each of the individually named Defendants, who are neither alleged to be members of Jewish Families Alliance nor alleged to have been involved in the threats, harassment, or verbal abuse Ridgeway claims.

*Kazatsky v. King David Mem'l Park, Inc.,* 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d).  Courts in this district have repeatedly found that racial discrimination, retaliation, and work-related harassment are insufficient to meet this "extreme and outrageous conduct" standard, *see Brown v. Am. Airlines, Inc.*, 723 F. Supp.3d 411, 423-24 (E.D. Pa. 2024) (collecting cases); *Hargraves v. City of Phila.*, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007) (same).  Instead, something more is required, such as a "level of physicality," or "assault or threats of assault."  *Stokley v. Bristol Borough Sch. Dist.*, 2013 WL 4787297, at *3 (E.D. Pa. Sept. 9, 2013); *see also Lane v. Cole*, 88 F. Supp.2d 402, 406 ("Invidious discrimination is not alone sufficient . . . The ejection of a tenant from her home with threats of violence in retaliation for her refusal to accede to racial discrimination is another matter.").

Ridgeway has alleged that the individually named Defendants discriminated against her and engaged in retaliatory investigations and workplace discipline, but she did not allege that they participated in or directed any physical assault or threats be made against her.  But "[a]s reprehensible as deliberate discrimination can be, '[c]ourts in this District have repeatedly found that racial discrimination alone does not meet the extreme and outrageous conduct standard.'" *Stokley*, 2013 WL 4787297, at *3 (quoting *Hargraves v. City of Phila.*, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007)).  Because the conduct alleged by Ridgeway does not rise to the level of extreme and outrageous, Defendants' Motion shall be granted with respect to the remaining individually named Defendants.

## IV.    CONCLUSION

Defendants' Motion shall be granted as to the intentional infliction of emotional distress claims against Watlington and Rauch because both are immune from suit under the doctrine of high public official immunity.  The Motion shall also be granted as to the remaining intentional infliction of emotional distress claims against Gordon, Grant-Skinner, Jubilee, Chapman, and

Crowder because the conduct alleged does not rise to the level of extreme and outrageous conduct as a matter of law.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

   **/s/Wendy Beetlestone**
**WENDY BEETLESTONE, C. J.**

13